## JOHN A. NEWCOMB v. STATE.

No. A-3994.    Opinion Filed April 10, 1923.
(213 Pac. 900.)

(Syllabus.)

1. **Larceny—Evidence Sufficient to Support Conviction.** Evidence examined, and held sufficient to support the verdict and judgment.

2. **Preliminary Examination—Magistrate May Correct Indorsement on Preliminary Information to Rectify Clerical Error.** Upon motion to set aside the information on the ground that the examining magistrate had not held the defendant to answer the charge, the trial court may permit such magistrate to correct his indorsement on the preliminary information filed with the court clerk to speak the truth and to rectify an apparent clerical error.

3. **Indictment and Information—Information Charging Larceny not Duplicitous Because of Additional Allegation of Value.** An information otherwise containing all the essential allegations necessary to charge the larceny of an automobile under section 2120, Compiled Statutes 1921, is not duplicitous merely because it contains an additional allegation of the value of the property; such allegations may be rejected as surplusage, which does no harm.

4. **Witnesses—Cross-Examination of Defendant—Questions as to Conviction for Crime Though Pending on Appeal.** When the defendant takes the witness stand in his own behalf, he may be asked if he has ever been convicted of a crime. The purpose of this evidence is to affect his credibility as a witness. The fact that an appeal is pending from such conviction will not render such evidence inadmissible.

5. **Appeal and Error—Harmless Error—Instruction Favorable to Defendant.** Under the evidence in this case an instruction requiring the jury to find "beyond a reasonable doubt that de-

fendant was connected with the original taking of said automobile, and although you may be satisfied beyond a reasonable doubt that the defendant came into possession of said car with knowledge that it had been stolen, and although you may find that he disposed of it with such knowledge and with the fraudulent intent to defraud the owner, still he would not be guilty of the crime charged unless he took the automobile originally, or aided and abetted, though not present, in taking the same from the possession of the owner thereof, and if from all the evidence you entertain a reasonable doubt as to whether the defendant was so connected with the original taking of said automobile, you should acquit him," is not inconsistent with the theory that it is incumbent upon the state to prove the guilt of the defendant beyond a reasonable doubt and is a safeguard against convicting defendant of the crime of receiving stolen property under a larceny charge. Said instruction was favorable to defendant and is not misleading.

6. **Trial—Failure to Instruct on Law of Circumstantial Evidence not Error Where not Requested.** No request for an instruction on the law of circumstantial evidence having been interposed, it is held that the failure to instruct on that subject was not reversible error in this case.

.7 **Appeal and Error—Lack of Record for Review of Improper Argument.** Where the record contains no properly certified recital setting out specifically the language used by the county attorney in his argument and presenting enough of the argument to enable the court to pass intelligently upon the question to be presented, nothing is raised which may be properly considered on appeal.

8. **New Trial—Impeachment of Verdict by Affidavit Showing Misconduct of Jurors.** Unless required by statute, a verdict cannot be impeached by the affidavits or testimony of jurors showing misconduct on their part in arriving at the verdict.

Appeal from District Court, Caddo County; Edward Dewes Oldfield, Judge.

John A. Newcomb was convicted of stealing an automobile, and he appeals. Affirmed.

W. H. Amspacher, who lived in the town of Apache, Caddo county, Okla., was the owner of a Ford five-passenger touring car, 1920 model, and on the evening of October 21, 1920, he stored this car in an implement house owned by him,

located on the main street of that town. Up until September, 1919, the defendant, John A. Newcomb, had lived in and around the town of Apache for 12 or 14 years, part of which time he was engaged in farming, and later was engaged in the garage business, and also in the business of buying and selling secondhand automobiles in said town. Newcomb had known Amspacher for a long while and was acquainted with the location of the business and residence properties in the small town of Apache. At the time of the commission of this larceny, Newcomb's father and step-mother were still residents of the town of Apache, but in September, 1919, Newcomb had left the town, and during the interval between September, 1919, and October 21, 1920, Newcomb had been engaged in several different occupations. Part of the time he says he was traveling for an oil company, part of the time he was running a rooming house in the city of Walters, Cotton county, Okla., and at the time of the commission of this larceny he had re-entered the business of buying and selling secondhand automobiles, with the center of his operations in the city of Lawton, Okla. On the afternoon of October 21, 1920, according to Newcomb's testimony, he left the city of Lawton in an automobile and drove to the town of Apache, as he says, for the purpose of seeing his father relative to getting his father to lease some land he owned near Apache for oil development purposes to a man by the name of De Moss. Newcomb further testified that he left the town of Apache about 6 or 6:30 that evening and returned to Lawton, arriving there about 8:30. We will take up the thread of Newcomb's story later on in this narrative. We now return to the testimony of Amspacher.

Amspacher testified that on the morning of October 22, 1920, he went to the implement house for the purpose of getting his automobile, and found that the same had been stolen.

He had given nobody his consent to take the car. It had rained considerably on the afternoon of October 21st, and there had been a drizzle during part of the night following the 21st. Upon discovering the next morning that his automobile had been stolen, Amspacher noticed in the soft dirt and mud between the implement house and the street in front of it the tracks where the car had been backed out of the implement house. These tracks led west from the implement house a block and a half and turned south on the road toward Lawton, at which point the tracks of another car were found. Amspacher and those with him followed these tracks to the paved streets of Lawton, where they were unable to farther distinguish them. Amspacher immediately reported his loss to the chief of police at Lawton, to the commandant at the Ft. Sill military reservation near Lawton, and to the police authorities in the city of Walters, Okla. On the day following, which was the 23d of October, 1920, Amspacher returned to Lawton for the purpose of searching for his stolen car, and, if he did not find it there, for the purpose of going to Wichita Falls and Burkburnett, Tex., to make a search in those places and to notify the police authorities there of his loss. On this day Amspacher looked around Lawton some for the car, but, failing to locate it, he went to the depot at Lawton between 12 and 1 o'clock for the purpose of going to Wichita Falls and Burkburnett, as he had previously planned. While waiting at the depot for his train, he saw the defendant Newcomb there, and, being an old friend and neighbor of Newcomb's, he told Newcomb of his loss and gave Newcomb a detailed description of the car, describing certain peculiarities about the car, its model, engine number, etc. Amspacher said Newcomb took this description down on a slip of paper, and at that time Newcomb was in possession of Amspacher's car it later developed, but Newcomb claims that he did not know that the car that Amspacher described to him was the

one that he claimed to have bought from a total stranger on the streets of Lawton about noon of October 22, 1920.

About two weeks later Amspacher's stolen car was located in the city of Walters, Okla., in the possession of a man by the name of Cole, a taxi driver. Cole had purchased the car from Newcomb, giving in part payment an old car that he had previously been using in his taxi business, paying the balance to Newcomb in cash. Upon Newcomb hearing that a man by the name of Taylor who lived in Walters, and through whom Newcomb made the deal with Cole, had been arrested and charged with stealing the car, Newcomb proceeded to fortify himself with a bill of sale to the car, taking some man who represented himself to be John Rector before a notary public in the city of Lawton on the 5th day of November, 1920, and Rector there excuted a bill of sale to Newcomb for one five-passenger Ford car, engine No. 4142035, model 1920, for the sum of $400. In this connection it is pertinent to comment that the engine number given in this bill of sale did not correspond with the engine number on Amspacher's car at the time it was stolen; neither did it correspond with the engine number on Amspacher's car at the time it was found in the possession of Cole.

Newcomb was later arrested and placed in jail at Lawton on this charge and on another automobile larceny charge. Before Amspacher went to Walters to determine if the car the police had there seized from Cole was the identical car stolen from him, he stopped at Lawton on his way down there, visited the jail, and there had a conversation with Newcomb. Amspacher detailed that conversation as follows:

"A. I asked Mr. Newcomb if he knew anything of the whereabouts of my car; that they had him implicated in car stealing; that I would like to know if he had any idea where I might find my car. He said he didn't. I called him by

the first name. I said, 'John, possibly you have handled my car; was you particular about looking after I gave you that description to see whether you got hold of my car or not?' and he said, 'I was;' and I says, 'You are sure, then, that you never handled my car at all;' and he says, 'Yes; I am sure that I never.' I had heard about a car that they had in custody at Walters, and I told him that I was going to Walters to try to identify that car, and I says, 'John, if it is mine, what would you do if you was in my place and I was in your place; would you prosecute, or what would you do?' and he hung his head and said, 'Wilbur, I would wait a while; everything will come out all right;' and I asked him if he looked to see about the iron felloe on this car when he bought it, and he said he did. He said he took a hammer and went around to each one and sounded them to see whether it was an iron felloe or a wood felloe, and the wood felloe is about that wide (indicating), and the iron felloe about that wide (indicating), on a Ford wheel, and I told him then, I says, 'It would not have been necessary to have sounded it with a hammer;' and he said, 'I did, because I wanted to make sure;' and I said, 'How about the lamps;' and he said, 'This one didn't have any lamps.' That is the words that he told he, and I asked him about the mohair top, and he said it had a mohair top.''

After having the foregoing conversation with Newcomb, Amspacher went to Walters and identified the car in the possession of the police there as the one stolen from him. The car had been greatly changed between the time of its larceny and the time of its discovery. Amspacher describes these changes as follows:

''A. The lamp and wind shield brackets had been removed and replaced with a different kind, those without the place for the lamps, the nickel motormeter was gone, the leather crank holder was gone, and the wind shield was replaced with the new one, the cracked one was gone, and had been replaced with a new one, and the left rear wheel was an old wheel partly worn out with a wood felloe, and my iron

felloe was gone. The wheel with the iron felloe was gone, and the tires had been changed. The front tires had been changed. It had different kind of tires on it than it had when I last used the car. Q. Was there any spokes cracked? A. There was spokes cracked in this old wheel. I don't remember just how many, but some of them were cracked badly, and it had an old hub cap that was split. It just looked like they took a hammer and drove it on in place of screwing them on in the manner they screw them on. Q. Now what was the appearance of the other three wheels in comparison to this last wheel? A. The other three were new. They had the appearance of new wheels. Q. Was your car a practically new car or otherwise? A. It was a brand new one; that is, practically so. Q. Now, was there any other changes on your car other than what you have related? A. Well, the tires, I believe I told about them, though. It had Firestone tires on it in front when it came back, and Goodyear tires when it left me? Q. Now, did you examine the numbers of this car? A. Oh, the numbers weren't the same as they were at the time it disappeared. They had been mutilated in some manner, and another number substituted for the one that was on it.''

To sum up the state's case, we have the following facts and circumstances: Amspacher's car was stored in his implement house in the town of Apache on the evening of October 21, 1920, and on that same afternoon Newcomb admits that he was in the town of Apache. The car was traced to the city of Lawton. There all trace of it was lost. On October 22, 1920, the next day after the larceny, Newcomb was in possession of this car. The next day Amspacher told Newcomb that the car had been stolen and described to him the pecularities by which the car could be identified. At that time Newcomb was still in possession of the car, but told Amspacher nothing about it. About two weeks later the car was found in possession of Cole at Walters, Okla. Newcomb had sold the car to Cole. There were numerous

changes in the appearance of the car, and the engine number had been mutilated and changed. These particular changes were made in those parts by which the car could be most readily identified. Before Amspacher went to Walters to see if the car there was his car he again talked to Newcomb, and in that conversation, and while Newcomb was in jail, Newcomb denied any knowledge of the car, and told Amspacher he had no idea where he could find his car, and that he was sure that he (Newcomb) had never handled the car.

We now return to a narrative of the explanation given by Newcomb of how he came into the possession of this car, and in this connection it must be remembered that this explanation was made after Newcomb had on two previous occasions an opportunity to tell Amspacher that he had dealt in such a car.

Newcomb's story is that he bought the car from a man by the name of John Rector. Rector was a stranger to Newcomb, and was introduced to him by a young man by the name of Russell. Russell was at that time 19 years of age, a soldier stationed at Ft. Sill and engaged as a cook. It appears from Newcomb's testimony that a short time previous to this he claimed to have also bought a five-passenger Ford automobile from Russell. This was also a stolen car. Newcomb claims Russell introduced him to Rector, and that Rector had the car on a public street in the city of Lawton, and Newcomb says that, after driving the car around a block looking it over, he purchased the same from Rector, paying him $400 therefor, without making any inquiry as to who Rector was, and without at that time taking a bill of sale or any other evidence of Rector's ownership of the car. Nobody but Newcomb and Russell ever heard of Rector or ever saw him either before or after that transaction. Newcomb's explanation of the changes made in the car is that he made them so that the car would

look- like a later model than it really was, and would therefore sell or trade to better advantage. However, the serial number on the engine was changed. The original number of the engine was 4169446, while the engine number on the car when it was recovered at Walters was 3014076. Why the serial number of the engine should be reduced over 1,000,000 to give the car the appearance of being a later model is not explained. In addition to the testimony of Newcomb concerning the explanation of his recent possession of the stolen car, there is also testimony to the effect that Newcomb bore a good reputation for honesty in and around the town of Apache prior to the time of the alleged commission of this crime.

The witness De Moss also corroborates Newcomb's testimony that Newcomb went to Apache on the afternoon of October 21, 1920, to see his father for the purpose of procuring oil leases for De Moss. In this connection the record also shows that the father was willing to lease his land for that purpose, but, if there was any other effort to obtain these leases between the 21st of October and the date of Newcomb's arrest some three weeks later, the record is silent on that point. No doubt the jury was led to believe that such an important business transaction, once so favorably started, would not be allowed to drag, and that, if Newcomb in fact went to Apache on October 21, 1920, in good faith for such purpose, he would have followed up a transaction which so often has opened the way in this state to wealth of untold millions.

Newcomb's explanation of his failure to take a bill of sale at the time he claims to have purchased this car was because he said he knew Russell was all right, and for that reason he believed the car belonged to Rector. The very fact that Russell had anything to do with this car should have aroused the suspicions of an honest man. If Newcomb

knew Russell, he knew also that Russell was a soldier in the United States army and engaged in the capacity of a cook at Ft. Sill. He must have known also that the compensation paid to a private soldier is very meager, and that Russell, if he was a man of means, would not likely be enlisted in the United States army, and, if he was enlisted in the United States army, his means would be such as not likely to permit him to be honestly engaged in handling automobiles, but Newcomb, claiming to have bought another automobile a few weeks before from Russell, had to give Russell an air of respectability and honesty before the jury.

Russell's story is equally as flimsy and incredible as that of Newcomb, if not more so. Russell claims that along about 6 o'clock on the evening of October 21, 1920, he came from Ft. Sill to Lawton on the interurban car, and was standing on the public streets in Lawton near a pool hall, when he was approached by a stranger who asked him if he wanted to make some money, to which Russell replied that he did if it could be easily made without much effort on his part. This stranger then told Russell that he had an automobile in storage in the town of Apache, Okla., and asked Russell if he could drive a car, and Russell told him he could. The stranger then took Russell to another Ford car he had in Lawton, and together they drove to Apache, and there took Amspacher's car out of his implement house. Russell, of course, believed that this was the stranger's car that he had stored. They drove to Lawton, arriving there about 10:30 that evening, and the stranger did not at that time pay Russell, but told him to meet him again the next day about noon, which Russell claims he did, and the stranger then asked if he knew where he could sell a car, and Russell then told him that Newcomb had bought one from him, and Russell went and got Newcomb, and Newcomb bought the car from the stranger

.for $400, and the stranger then gave Russell $100 for going to Apache with him and driving the car back to Lawton. According to Russell's story, he received as his pay for this service compensation at the rate of about $25 an hour. Of course, this never aroused the suspicions of Russell, although it probably did those of the jury.

"O, what a tangled web we weave,

When first we practice to deceive."

P. W. Cress, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J. (after reviewing the evidence as above). In view of the fact that one of the contentions of the defendant's counsel, both in the lower and in this court, is that the evidence is wholly insufficient to sustain the verdict and judgment, the foregoing statement of facts in the case has been made somewhat argumentative as well as narrative.

We will dispose of that proposition with the statement that we deem the evidence amply sufficient to support the conviction. The state presented a strong chain of circumstances against the defendant, which, together with the proper inferences arising therefrom, in the absence of any explanation by defendant, was sufficient to establish his guilt. The defense interposed only tended to strengthen the probative force of the state's evidence.

It is also contended that the trial court erred in overruling the defendant's motion to quash the information. The information upon which the preliminary examination was had in the county court of Caddo county charged the defendant, John A. Newcomb, together with one L. J. Taylor,

with the identical crime for which he was tried and convicted in this case.

When the county judge filed his transcript of proceedings in the district court, he indorsed upon the information a finding that the offense named had been committed, and that "there is sufficient cause to believe the within-named J. M. Dilling guilty thereof, and I order that he be held to answer the same." No person by the name of J. M. Dilling was named in the preliminary information. The motion to quash the information was upon the ground that the committing magistrate had not indorsed thereon an order holding the defendant to await the action of the trial court. There was no contention that the defendant had not been accorded a preliminary examination into the offense.

Upon the filing of the motion to quash the information, leave was granted the committing magistrate to amend his indorsement on the preliminary complaint, and the indorsement as amended was as follows:

"It appearing to me that the offense named in the within complaint mentioned has been committed and there is sufficient cause to believe the within named John A. Newcomb and L. J. Taylor guilty thereof, I order that he be held to answer the same."

The motion to quash the information was then overruled, to which action exception was taken. It is contended that this action constituted reversible error because the second indorsement was inconsistent with the previous indorsement. The second indorsement was identical with the previous indorsement except as to the names of the parties held to answer the offense. The first indorsement was plainly a clerical mistake on the part of the committing magistrate. According to the first indorsement, he held "The within-named J. M. Dilling to answer said charge," when in truth and in fact

there was no such person named in the preliminary complaint. The subsequent indorsement was merely made to correct this patent mistake and was permissible under the holdings of this court in the following cases: Williams v. State, 6 Okla. Cr. 373, 118 Pac. 1006; Bradshaw v. State, 16 Okla. Cr. 624, 185 Pac. 1102.

The defendant, Newcomb, was not prejudiced by permitting the committing magistrate to amend his transcript to speak the truth. There is no contention that defendant was not accorded a preliminary examination into this offense as required by section 17, art. 2, of the Constitution.

Next it is contended that the court erred in overruling the demurrer to the information. The demurrer was on the ground that more than one offense was charged in one count of the information, and it was therefore duplicitous. In this connection it is contended that the information charged both grand larceny under sections 2101 and 2104, Compiled Statutes 1921, and larceny of an automobile under section 2120, Id. The latter statute is equivalent in its terms to section 2116, Compiled Statutes 1921, relative to the larceny of live stock.

The information in this case contains all the allegations necessary to support a conviction under the automobile larceny statute with the additional allegation of the value of the property taken. In construing the larceny of live stock statute in Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883, this court, where it was contended that the information was duplicitous in charging larceny of live stock because the allegation of value was contained therein, stated in the body of the opinion on page 155 of the official report (117 Pac. 886):

"The allegation of value in the information is not material, and may be rejected as mere surplusage, which does no harm."

See, also, Stephens v. State, 12 Okla. Cr. 90, 93, 152 Pac. 138; Dunn v. State, 14 Okla. Cr. 452, 172 Pac. 463.

It is next contended that the court erred in admitting incompetent, irrelevant, and immaterial evidence and also in excluding competent evidence. The incompetent evidence alleged to have been admitted relates to the testimony elicited upon cross-examination of the defendant concerning his previous conviction in another county of automobile larceny. In this connection it is contended that the cross-examination was improper and the evidence inadmissible for the reason that such conviction had not become final because an appeal was then pending therefrom. This contention had heretofore been decided adversely in the cases of Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029, and Porter v. State, 20 Okla. Cr. 355, 202 Pac. 1041. In the latter case it is said:

"This court has held in the case of Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029, that: 'Where defendant takes the witness stand in his own behalf, he may be asked if he has ever been convicted of a felony or of any offense showing want of moral character. The purpose of this evidence is to affect his credibility as a witness by showing that he has been convicted of a felony or of any offense indicating a want of moral character. The fact that an appeal is pending from such conviction will not render such evidence inadmissible. It is the verdict of the jury upon such accusation that affects the credibility of the witness.'

"While there are decisions in other states announcing a contrary doctrine, to the effect that a conviction is not final until the appeal is decided, and that while such appeal is pending it cannot be shown that the defendant was convicted of such former offense, for the purpose of affecting the credibility of the defendant or for any other purpose, we think the law as announced in the Manning Case is supported by the weight of authority and the better reasoning."

Further, it is contended that the trial court erred in instructing the jury as to defendant's guilt under the larceny of automobile statute and authorizing his conviction and punishment under said statute for the reason that the same is unconstitutional and void as being in conflict with section 57 of article 5 of the state Constitution. This contention is adversely disposed of in Jackson v. State, 22 Okla. Cr. 338, 211 Pac. 1066.

Instruction No. 5 is also complained of. Said instruction is as follows:

"(5) The court instructs the jury that the defendant, John A. Newcomb, is charged in this case with stealing the automobile in question, and, before you can convict him, you must find beyond a reasonable doubt that the defendant was connected with the original taking of said automobile, and although you may be satisfied beyond a reasonable doubt that the defendant came into possession of said car with knowledge that it had been stolen, and although you may find that he disposed of it with such knowledge and with the fraudulent intent to defraud the owner, still he would not be guilty of the crime charged unless he took the automobile originally or aided and abetted, though not present, in taking the same from the possession of the owner thereof, and, if from all the evidence you entertain a reasonable doubt as to whether the defendant was so connected with the original taking of said automobile, you should acquit him."

It is contended that the following language: "And, if from all the evidence you entertain a reasonable doubt as to whether the defendant was so connected with the original taking of said automobile, you should acquit him"—cast an undue burden upon the defendant, in that it requires the defendant to establish the truth of an affirmative defense to a reasonable probability.

The instruction is not open to the criticism lodged against it. It is consistent with the theory as contained in the separate

instruction that it is incumbent upon the state to prove the guilt of the defendant beyond a reasonable doubt. It impresses upon the jury the fact that the jury must find beyond a reasonable doubt that the defendant was connected with the original taking of said automobile. The purpose of the instruction was to inform the jury that, although they might believe the defendant guilty of the crime of unlawfully receiving stolen property, they could not convict him of that offense under the charge contained in the information. In this respect the instruction was fair to defendant, and in the opinion of this court was not misleading or prejudicially erroneous.

It is also contended that the trial court erred in failing to instruct on the law relative to circumstantial evidence. No request was made for an instruction on this subject. In view of the defense interposed and in the absence of such request, it is considered that the failure to instruct on this subject was not reversible error in this case.

It is also contended that the county attorney in his opening argument made prejudicial remarks not supported by the evidence. We find no recital in the case-made certified to by the trial judge that the county attorney made the remarks complained of. The motion for a new trial contains an affidavit to the effect that the county attorney made such remarks, and to which the defendant objected and excepted, setting out the remarks, but outside the motion for a new trial there is no recital in the case-made specifically setting forth the remarks complained of or the connection in which the argument was made.

In Irvine v. State, 10 Okla. Cr. 4, 133 Pac. 259, it is held:

"Objections to the argument of the county attorney placed in the case-made by counsel for a defendant will not be considered unless they are included in the recitals made by the

trial judge, and unless they also set out the language used by the county attorney and show that the same was excepted to at the time."

Where the record contains no recital properly certified to by the trial judge setting out specifically the language used by the county attorney and presenting enough of the argument to enable this court to pass intelligently upon the question to be presented, there is no question raised which may properly be considered on appeal. Questions of this character may not be raised for the first time in the motion for a new trial. Webber v. State, 18 Okla. Cr. 323, 193 Pac. 48; Gaines v. State, 18 Okla. Cr. 525, 196 Pac. 719.

Further contention is made that this judgment should be reversed because of misconduct of the bailiff in communicating with the jury after retirement to consider its verdict. This assignment is not supported by the record before us.

Attempt was also made to impeach the verdict by the affidavit and testimony of jurors. This proceeding is not allowable in this jurisdiction. Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172; Overton v. State, 7 Okla. Cr. 203, 114 Pac. 1132, 123 Pac. 175; Oklahoma, K. & M. Ry. Co. v. McGhee, 84 Okla. 116, 202 Pac. 277.

Upon a careful consideration of the entire record, the conclusion is reached that defendant was accorded a fair trial.

The judgment is affirmed.

BESSEY and DOYLE, JJ., concur.