## DAVE COKER et al. v. STATE.

No. A- 4058.     Opinion Filed Feb. 29, 1924.
(223 Pac. 711.)

(Syllabus.)

1. **Appeal and Error—Misleading Instructions—When Defendants Cannot Complain.** Except where there is a manifest misstatement of law in the instructions to the jury, such as will probably mislead the jury in arriving at a true verdict, the defendants will not ordinarily be heard to complain, where no suggestion is made pointing out to the court how the instructions drawn by the court could be improved.

   (a) This rule will not apply to an instruction clearly or fundamentally wrong, but it should apply in all cases where the question is a fine distinction of syntax or of technical inaccuracies in defining burden of proof, reasonable doubt, or self-defense.

2. **Trial—Instructions—Definitions of Collateral Questions—Requests.** The court should, without request, instruct the jury upon the salient principles of law brought out by the evidence; but the court is not required, in absence of specific request, to incorporate in the instructions a complete definition of every collateral question of law that may arise.

3. **Trial—Argument of County Attorney Arousing Passions of Jury.** Exhortations to the jury by the county attorney in argument, to the effect that the community is confronted by a great wave of crime, and that it is the duty of the jurors to see that the law is enforced, should be discouraged. But unless such argument is indulged in to such an extent as would probably arouse the passions and prejudices of the jury in the case on trial, it will not amount to reversible error.

4.  **Homicide—What Facts as to Private Arrest Admissible in Justification.** Where the defendants seek to justify in a homicide case under the provisions of section 2477, Comp. Stat. 1921, authorizing a private citizen to arrest a felon, the fact that a felony had been committed and that they knew of it is all that is admissible in evidence on that issue. The defendants will not be permitted to show the details surrounding the commission of the felony.

5.  **Witnesses—How Evidence of Character Witness May Be Attacked.** The evidence of a character witness for the defendant may be attacked by asking such witness if he did not know that the defendant had killed two men, if he did not know that he had committed larceny, or other crimes, provided there is some foundation for propounding such questions, and that the matters suggested are not imaginary and propounded merely to prejudice the jury.

Appeal from District Court, Seminole County; J. W. Bolen, Judge.

Dave Coker and J. B. Coessee were convicted of manslaughter in the first degree, and they appeal. Affirmed.

Maben & Pitman and Pryor & Stokes, for plaintiffs in error.

The Attorney General, and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Dave Coker and J. B. Coessee, plaintiffs in error, here designated the defendants, were by information filed in the district court of Seminole county, May 21, 1918, charged with the murder of Ben Coker on April 14, 1918. At the close of the trial, February 22, 1921, by a verdict of the jury they were found guilty of manslaughter in the first degree, with the punishment of each assessed at imprisonment in the penitentiary for a term of four years.

The tragedy resulting in the death of Ben Coker was a sequel to the death of Charley Coker on the preceding

night, as a result of a gunshot wound inflicted by Ben Coker, deceased. Ben and Charley Coker were cousins; defendant Dave Coker was the father of Charley Coker and defendant Coessee was a brother-in-law of Charley and son-in-law of Dave Coker. Some time in the early part of the night on which the first difficulty occurred these defendants were informed that Ben Coker had shot and killed Charley. Early the next morning the defendants mounted their horses and went to the place where the body of Charley Coker lay, remaining there for a period of 20 or 30 minutes. There they discovered buggy tracks leading towards Ben's house. They followed these tracks for some distance, past the entrance to Ben's place and on into a road through the timber. About 10 o'clock in the morning they overtook Ben and his brother, Tom Coker, driving in a two-horse, one-seated buggy, the top of which was laid back.

The road was rough and unfrequented, with trees and underbrush on either side. Tom and Ben were driving in a trot, and as the defendants approached from the rear Dave Coker hailed them, saying, "Who killed Charley?" Tom Coker testified that Ben told him to tell the defendants that they did not know. This he did, and one of the defendants replied, "You are lying." It is admitted that defendant Dave Coker told Tom Coker to get out of the buggy, which Tom refused to do. Immediately a pitched battle took place between these four people, all armed, in which Ben Coker was killed, both the defendants were seriously wounded, and Tom Coker was also wounded. The testimony is conflicting as to who fired the first shot, but all agree that the shooting on both sides commenced at practically the same time.

The defendants' defense was that they were acting under the authority granted them as citizens under the provisions of section 2477, Comp. Stat. 1921, as follows:

"Arrest by Private Person. A private person may arrest another:

"First. For a public offense committed or attempted in his presence.

"Second. When the person arrested has committed a felony although not in his presence.

"Third. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

They justify themselves under this statute on the ground that a murder had been committed by Ben Coker, although not in their presence, and that they apprehended Ben in the act of making his escape, aided by his brother Tom, and sought to arrest him, and that his resistance resulted in the death of Ben and the wounding of the other participants as before stated.

Defendant Coessee claimed that he took no part in the shooting and did nothing to bring on the difficulty, except that he was accompanying his father-in-law, Dave Coker, at the latter's request. This is in conflict with the dying statement of Ben Coker and with the testimony of Tom Coker, who claimed that Coessee, as well as Dave Coker, participated in the actual shooting. Defendant Coessee's claim that he did not shoot was in some measure corroborated by the testimony of a deputy sheriff who found Coessee wounded by the side of the road near the scene of the tragedy, with his pistol by his side, a loaded cartridge in each chamber, and showing no signs of having been recently discharged.

A disinterested witness, Mr. Vellines, testified that Ben and Tom Coker passed him on the road, and that after passing them he met the defendants riding their horses at a fast gait, apparently pursuing Ben and Tom, and that at the time Coessee had his hand upon his pistol; that after having traveled about 150 yards he heard the shooting.

The numerous assignments of error urged by defendants may be grouped thus: First, Alleged misstatements of the law in the instructions to the jury. Second. Misconduct of the county attorney in his argument to the jury. Third. Errors of the court in sustaining objections to the testimony offered by the defendants and in permitting improper cross-examination of certain witnesses for the defendants.

The defendants complain that the instructions to the jury contained several prejudicial misstatements of the law applicable to the facts. The record shows that all but two of the instructions given were excepted to by the defendants, and that these objections and exceptions were made without any request on the part of defendants for any other or clearer statement of the law covering the matters embodied in the instructions given, and without pointing out to the court in what particulars the instructions were deemed deficient. The instructions to which no exceptions were taken, being instructions numbered 6 and 11, are as follows:

"The defendants are presumed to be innocent, and that presumption follows them through all stages of the trial until overcome by competent evidence to your satisfaction beyond a reasonable doubt."

"If you find the defendants guilty of murder you will assess their punishment at death or at life in the peniten-

tiary, and you will so say by your verdict. If you find the defendants guilty of manslaughter in the first degree you will assess their punishment at any term in the penitentiary not less than four years.''

The defendants claim chiefly that this case should be reversed because of improper instructions of the court. In order to comprehend this contention it will be necessary to set out in full the instructions complained of, which are as follows:

''1. In the charge of murder is also included the charge of manslaughter in the first degree.''

''2. Murder is the killing of a human being without authority of law and with a premeditated design to effect the death of the person killed.''

''3. You are instructed in order to reduce an unlawful killing from murder to manslaughter the mind of the defendants must be so agitated by anger or sudden heat of passion as to render it incapable of premeditating at the time of the fatal shooting; and if the minds of the defendants were so agitated by anger or passion upon a probable cause that it precludes the idea of premeditation, then such killing, although unlawful, would be manslaughter and not murder.''

''4. Manslaughter in the first degree is the unlawful killing of a human being without a premeditated design to effect the death of the person killed.''

''5. To this charge the defendants have entered their plea of not guilty, which places the burden upon the state to prove every material allegation in the information beyond a reasonable doubt.''

''7. The defendants in this case interpose a plea of not guilty, which includes all the defenses known to the law. The defendants say that they acted in their own necessary self-defense; and in this connection you are in-

structed that when a party is assaulted by a deadly weapon in the hands of another that he has a right to use such force as is necessary to repel such assault; and in considering the defense of self-defense you will place yourselves in the shoes of the defendants, and if, after viewing it from the standpoint of the defendants you believe that the assault, together with all the surrounding facts and circumstances, would create in the minds of the defendants an apprehension of danger of losing their lives or having inflicted upon them great bodily harm, then in that event they would have a right to shoot. Therefore, if the defendants approached the deceased and Tom Coker with the lawful purpose of arresting them and that said deceased and Tom Coker made demonstrations with guns such as would be calculated to create in the minds of reasonable men, situated as the defendants were, an apprehension of danger to their lives or of receiving great bodily harm, then you are instructed that the defendants had a right to shoot, if you find beyond a reasonable doubt that they did shoot, and you will acquit.''

"8. If the deceased, Ben Coker, the night before killed Charley Coker and was still at large and the defendants pursued the said Ben Coker and Tom Coker with the intention of arresting them, and when they approached the said deceased and Tom Coker they, or either of them, made demonstrations with a pistol, which demonstrations were calculated to create in the minds of the defendants a reasonable apprehension of danger to their lives or of having inflicted upon them great bodily injury, then you are instructed that they had a right to shoot and you will acquit.''

"9. You are instructed that if Ben Coker had slain Charley Coker on the night before and was still at large that the defendants had a right to arm themselves and pursue the said Ben Coker for the purpose of arresting him with all the rights of a regular officer of the law, provided that Ben Coker committed the offense and that the defendants had reasonable cause to believe that Ben Coker

was guilty of said offense, and to use all the necessary force to apprehend the said Ben Coker, even to the extent of taking his life, but before they would have a right to take his life in order to accomplish said arrest, it was the duty of the defendants to use all necessary means of arresting said Ben Coker before resorting to shooting him.''

"9A. Before the defendants would be entitled to protection under the law that extends to each citizen the privilege of arresting a felon, they must act in good faith and must have pursued the deceased with the sole purpose of arresting him.''

"9B. If you find beyond a reasonable doubt that the defendants armed themselves and pursued the deceased for the purpose of raising a row and if necessary to shoot the deceased, then you are instructed that the right of self-defense is forfeited and you will not consider that right."

"9C. Gentlemen of the jury, you are instructed that you may find one of the defendants guilty or acquit one; or you may find them both guilty or may find them both innocent."

"9D. You are instructed that all persons acting together in the commission of a felony are principals and may be prosecuted as such; and in this connection you are instructed that if you find beyond a reasonable doubt that the defendants went together in company with each other and they went prepared to aid each other, it is immaterial who fired the bullet that killed Ben Coker; and if you find beyond a reasonable doubt that Dave Coker unlawfully killed Ben Coker and that the other defendant was present ready to aid, abet and assist him, that he would be as guilty as though he fired the fatal shot himself."

"10. In this connection you are instructed that where a party is placed in a place of peril or apparent peril, such as to create in the mind of a reasonable man that he may have inflicted upon him great bodily injury or death, that he does not have to wait until the danger is actual and im-

pending, but that he has a right to act immediately if it appears to him that such action is necessary in order to prevent the carrying into effect the apparent purpose of the deceased to inflict great bodily injury or take his life, if you find that such exists, or have a reasonable doubt thereof.''

Except where there is a manifest misstatement of the law, such as will probably mislead the jury in arriving at a true verdict, the defendants will not ordinarily be heard to complain, where no suggestion is made pointing out to the court how the instructions drawn by him could be improved. This rule will not apply to an instruction clearly or fundamentally wrong, but it should apply to all cases where the question is a fine distinction of syntax or of mere technical inaccuracies, defining burden of proof, reasonable doubt, or self-defense. The average juror is not an expert logician. So where the instructions are couched in such language that the jurors may glean from the instructions given a fair conception of the law as applied to the facts the verdict will not be disturbed because the instructions may not have been perfect as interpreted by analytical experts, unless some change is suggested which would manifestly clarify the subject treated, or unless the instructions given are fundamentally wrong.

In nearly every record coming to this court the instructions to the jury are open to some criticism or other, so that, if this court were to reverse every case in which the instructions could be improved upon from a technical or analytical standpoint, nearly every case appealed to this court would be sent back for a new trial and cases would pass back and forth between the trial and appellate court like a weaver's shuttle at the loom. The policy of our law is to waive all immaterial or purely tech-

nical errors that do not affect the substantial rights of the accused to his prejudice.

Defendants criticize instruction No. 3. Since the conviction in this case was for manslaughter in the first degree, and there was no evidence warranting a verdict for a lesser degree of homicide or any other included offense, and no request was made for any such instruction, an inaccuracy in defining a degree of homicide would be immaterial. The same reasoning applies to instruction No. 4.

Ben Coker lost his life by the acts of the defendants, either with malice and premeditation or in the heat of passion by means of dangerous weapon, or else the homicide was justifiable on the ground of self-defense, as defined in other instructions.

Defendants complain particularly of instruction No. 7, insisting that this instruction shifts the burden of proof to the defendants and is argumentative, intimating conclusions not warranted by the evidence. We do not so construe this instruction as applied to the evidence. The defendants claim that they were peaceably endeavoring to make a lawful arrest, as private citizens. Assuming this to be true, the testimony shows that during the course of this attempt to make the arrest Ben Coker and Tom Coker resisted, and that the defendants may at some time during the difficulty have fired their pistols in self-defense. True, the jury did not believe that there was any element of self-defense, as shown by their verdict, but there was some evidence supporting that theory, calling for an instruction on the law of self-defense. And upon that issue instructions Nos. 6, 7, and 9B should be construed together. So construed, and considered together with all the other instructions and with the evidence shown in the record, they appear to be sufficient, and not prejudicial.

Defendants say that this instruction shifts the burden of proof under the holdings of this court in the case of Rogers v. State, 8 Okla. Cr. 226, 127 Pac. 365; McGill v. State, 8 Okla. Cr. 500, 129 Pac. 75; Bauer v. State, 3 Okla. Cr. 529, 107 Pac. 525; Johnson v. United States, 2 Okla. Cr. 17, 99 Pac. 1022.

In the Rogers Case the trial court, touching upon the question of self-defense, used this qualifying clause:

"Unless the facts constituting such reasonable cause have been established by the evidence in the case, you cannot acquit the defendant in such case on the ground of self-defense, even though you may believe that the defendant really thought he was in danger."

This court, in commenting upon this language, said that that part of the instruction complained of should have been omitted and instead the jury should have been instructed that in determining whether or not the defendant had reasonable cause to apprehend or fear death or serious bodily harm at the hands of the deceased at the time he fired the fatal shot, and if they entertained a reasonable doubt as to whether or not at the time the defendant fired the fatal shot he had reasonable ground to apprehend serious bodily harm or death at the hands of the deceased and in good faith acted upon that apprehension, they should resolve that doubt in his favor and acquit him. In the Rogers Case there was a positive direction that, unless certain facts were established by the evidence, "you cannot acquit the defendant in such case on the ground of self-defense, even though you may believe that the defendant really thought he was in danger." This was an instruction which did place the burden of proof upon the defendant and was manifestly erroneous. In the instructions Nos. 6, 7, and 9 B here we find no such language or its equivalent, and these instructions,

construed together, avoid the vice pointed out in the Rogers
Case.

It may be noted in passing that the Rogers Case was
long and complicated, and full of errors, and that the case
was really reversed on other grounds. The other cases cited
by defendants are only remotely in point, and need not
be here analyzed.

The defendants complain of instructions Nos. 9, 9A,
and 9B, particularly in the use of the language, "before
they would have a right to take the life of Ben Coker in or-
der to accomplish his arrest, it was the duty of the de-
fendant to use all necessary means of arresting said Ben
Coker before resorting to shooting." Defendants say that
the court should have more fully instructed the jury con-
cerning the meaning of "all necessary means of arresting,"
as defined by statute. Sections 2477 and 2478, Comp. Stat.
1921.

If defendants desired more specific instructions upon
this point, it was the duty of counsel to suggest them. While
the court is required, without request, to instruct upon the
salient principles of law brought out by the evidence, the
court is not required, in the absence of specific request, to
incorporate a complete definition of every collateral question
of law that may arise. To do so it would be necessary for
the trial judges to write a treatise on every issue of law in-
volved in the case—a practice that would tend to confuse
rather than enlighten the jury. Lumpkin v. State, 5 Okla.
Cr. 496, 115 Pac. 478; Huff v. Territory, 15 Okla. 377, 85
Pac. 241.

In the course of criminal procedure, society is entitled
to protection as well as the accused. This right of society
would be impaired by permitting a defendant to remain

silent, make no suggestions or requests for instructions deemed essential for the protection of the accused, and then claim immunity from punishment because every feature of the law was not fully defined in the instructions given. What we have said also applies to instruction No. 9D, relating to principals and accessories.

It is next urged that this conviction should be set aside because the county attorney in his argument to the jury supplemented his remarks with a sort of exhortation to the jury, to the effect that the community was confronted with a great wave of crime, and that it was the duty of the jurors to see that the law was enforced. This method of argument is, of course, subject to abuse, and should be employed sparingly, but this court has heretofore held that, unless it is indulged in to such an extent as would probably arouse the passions and prejudices of the jury in the case on trial it will not amount to reversible error.

The defendants complain next that they were deprived of showing how and in what manner Ben Coker killed Charley Coker the night preceding this homicide. The fact that a felony had been committed by Ben, and that the information had been communicated to the defendants, was all that the defendants had a right to show in order to justify them as private citizens in their attempt to arrest the person who committed it.

We find no error in the efforts of the state to impeach certain character witnesses for the defendants by asking them on cross-examination if they had not heard that defendant Dave Coker had killed two men; that he had committed larceny; and had been once or twice convicted of violating the prohibitory laws. Such questions may be proper where they are propounded in good faith and are not merely

imaginary suggestions made for the purpose of prejudicing the jury.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.