## JOE A. ROBERTS v. STATE.

No. A-5641.  Opinion Filed Dec. 20, 1926.
(251 Pac. 612.)

Bond, Melton & Melton, for plaintiff in error.

George F. Short, Atty. Gen., for the State.

BESSEY, P. J. By information, the plaintiff in error, referred to here as the defendant, was charged with the murder of M. H. Holland, and was convicted of manslaughter in the first degree, with his punishment fixed by jury at confinement in the penitentiary for a term of five years.

The defendant and his son were farmers who operated adjoining farms on which was grown large quantities of broom corn. At the time of the homi-

cide, the son was in ill health, and, the defendant was overseeing the harvesting of the broom corn on his son's farm.

On Friday, the day preceding the homicide, the deceased and his brother had been employed by the defendant to assist 20 or 25 other men there engaged in "tabling" and cutting the crop. These brothers were inexperienced in this kind of work and were not progressing as rapidly as others there at work, and some time during the day, the defendant remonstrated with them about the slow progress they were making. After they had worked a time on Saturday morning, the defendant again went to where the brothers were and again complained that they were not accomplishing as much as the others there at work. As to just what happened subsequently, the evidence is conflicting. The defendant claims that the brothers became hostile and insulting and ran him out of the field with their broom corn knives, that during the affray the defendant told them to quit work, and that he would pay them for the hours they had worked. He then proceeded to his home about three-quarters of a mile distant, and got his check book and an automatic shotgun and returned in an auto truck to where the brothers were in the highway, adjacent to where they had been working; that there the brothers again approached in a threatening manner, with their broom corn knives in their hands, and that the defendant pointed his shotgun at them and compelled them to throw their knives away; that, as the defendant was about to write a check, the brothers rushed forward to get possession of the shotgun; that the defendant seized the gun and struck the deceased on the head and knocked him down, and that the deceased arose and the defendant again knocked him down with his fist. Presently the

two brothers got ahold of the muzzle of the gun and struggled to take it from the defendant, when it was accidentally discharged, inflicting a mortal wound. The shot entered the head of the deceased near the posterior portion of the base of the skull, severing the jugular vein and passing out through the jaw, some scattering shot hitting the other brother.

Some of the evidence on the part of the state and the evidence of some of the witnesses introduced by the defense indicates that the defendant was the aggressor, and that the two brothers did not drive the defendant from the field with their corn knives, and did not assault or renew an assault in the highway, when the defendant returned with the shotgun, and that the homicide was committed under circumstances indicating that it was either murder or manslaughter. There were about 35 witnesses who testified in this case, a number of whom were eyewitnesses to some portion of the incidents surrounding the homicide. These laborers were scattered in different portions of the field. Their views were somewhat obstructed by the standing and tabled broom corn and rank weeds that grew along the fence row of the highway.

The location of the wound and its character are more easily reconciled with the facts as related by witnesses for the state showing culpability, than as claimed by the defendant, to the effect that the shot was fired accidentally while the deceased was trying to wrest the Winchester gun from the defendant's possession.

The issues of the different degrees of culpable homicide and of justifiable homicide by accident were all treated in the instructions to the jury.

The defendant says that the court erred in refusing to grant a continuance on his application on

account of the absence of three witnesses. At the trial, two of the three were reached and procured by court process. The third witness, Arthur Jobe, had been subpoenaed by the state, but did not appear. The defendant claims that Jobe and a witness named Gray were nearer and better able to observe the movements of the parties in the fatal controversy than were the other laborers there in the field. It was apparent to the court that there were a large number of witnesses present who saw the difficulty or portions of it, and that the evidence of Jobe would be largely cumulative. In this connection, it was proper to take into consideration the fact that these broom corn laborers were a transient, migratory class of laborers, and in case of a continuance, there might be others who could not be found, resulting in a series of continuances manifestly unfair to the state. True, the defendant is entitled to compulsory process to obtain witnesses, but this right must be exercised with diligence and cannot be unreasonably extended, especially where the details of the testimony sought are uncertain and of a speculative nature. Under the showing made, the court did not abuse his discretion in refusing a continuance. Harrison v. State, 29 Okla. Cr. 394, 234 P. 221; Green v. State, 29 Okla. Cr. 145, 232 P. 853; Kirk v. Ter., 10 Okla. 46, 60 P. 797.

The defendant challenged the correctness of several instructions. It is claimed this portion of instruction No. 3 is error:

"That if you find and believe from the evidence that any witness has wilfully testified falsely, the jury may disregard his entire testimony, whether corroborated or not."

The jury is not told that they must disregard the testimony of any witness, nor that they must believe

or disbelieve the corroborated evidence. As a matter of law, it might be better to tell the jury that they could, if they desired, consider only that part of the falsifying witnesses' testimony that was corroborated and disregard the rest, but as a matter of the objection to this instruction on the ground that it invades the province of the jury, the defendant must be concluded by the case of Cole v. State, 18 Okla. Cr. 430, 195 P. 901. This instruction begins thus:

"You are instructed, gentlemen, that you are the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each."

Taken as a whole, this instruction is not as faulty as the one in Cole v. State, supra. It is probable that the jury did not interpret this instruction as necessarily impairing their right to consider the testimony of an impeached witness. Be that as it may, the defendant introduced more impeaching testimony than the state, so that the vice complained of, if it had such effect, may have inured to his benefit.

In instruction No. 6, the court said:

"Homicide is murder, gentlemen.

"First, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being.

"Second, when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"Third, when perpetrated without design to effect death, by a person engaged in the commission of any felony."

The deduction made, as first above quoted, was an amplification of the statutory definitions of murder

given in instruction No. 8, particularly the phrase "designed to effect death." There was some evidence warranting such an instruction, though found insufficient by the jury, as shown by their verdict of manslaughter. Moreover, a defective instruction on murder will usually not operate to the prejudice of accused where the jury, by their verdict, eliminate the issue of murder by finding him guilty of manslaughter. Lady v. State, 18 Okla. Cr. 59, 192 P. 699; Cases Annotated, 23 A. L. R. 1554.

The defendant claimed the homicide was accidental. The evidence of the defendant himself is that he first used the gun as a club or missile, knocking the defendant down; that, immediately following, he knocked him down with his fist. Then followed the struggle to obtain possession of the gun. There was some evidence that they were thus engaged in a mutual combat. Under such circumstances, in the absence of a request, it was not obligatory upon the court to submit an instruction on self-defense.

As to the rules applicable to the wanton or reckless use of firearms, without intent to commit serious injury, including the intentional discharge of firearms, see cases and annotations, 23 A. L. R. 1554. The deduction to be drawn from these cases and supported by reason is that a jury might find that the accused, based upon his conduct on that day alone, acted in a manner imminently dangerous to others, evincing a depraved mind. We do not understand that the mental depravity referred to in the statute must be established by a series of antecedent acts.

The defendant complains that the court failed to instruct the jury on certain conclusions that might be inferred from the evidence. It is the duty of the court, without request, to instruct the jury upon all of the

essential issues raised by the evidence, but, where no omission is pointed out, the trial judge need not submit an instruction on every question of law that might be involved or touching upon every remote deduction that might be drawn from the evidence. Often too many instructions tend to make the instructions, as a whole, confusing, instead of elucidating the pertinent issues involved. Hopkins v. State, 28 Okla. Cr. 405, 231 P. 97; Coker v. State, 26 Okla. Cr. 230, 223 P. 711; Newcomb v. State, 23 Okla. Cr. 172, 213 P. 900; Thompson v. State, 26 Okla. Cr. 121, 222 P. 568; Horn v. State, 31 Okla. Cr. 347, 238 P. 967.

The defendant claims that a new trial should have been granted on the showing made on newly discovered evidence. The alleged newly discovered evidence is contained in an affidavit, made by O. V. Farr in Texas and J. T. Farr in the same state, that one Calvin McElroy, who had been working in the field with the other hands at the time of the shooting, had told these affiants that there was a conspiracy between the said Calvin McElroy, one Jess Morrissette, and Oscar Alcorn, and two unnamed others, all of whom had been present at the shooting, to "all swear alike so that Joe A. Roberts would be sent to the penitentiary."

It seems that the alleged newly discovered evidence was merely a hearsay statement made by one of the large number of men in the field in a chance conversation on the street long after the crime. Manifestly, mere hearsay street rumors of this character do not constitute such newly discovered evidence as will make it obligatory upon the trial court to grant a new trial.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.