## JOHN DIXON v. STATE.

No. A-6830.  Opinion Filed Nov. 16, 1929.
(282 Pac. 686.)

Blanton, Osborn & Curtis and Sandlin & Winans, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, John Dixon, hereinafter referred to as defendant, was convicted in the district court of Garvin county of the crime of manslaughter in the first degree, and his punishment fixed at imprisonment in the state penitentiary for a term of 7 years.

This defendant was indicted jointly with his brother Roy Dixon for the murder of one Francis Pierce, which was alleged to have been committed on or about the 5th day of March, 1926. This killing occurred at a country dance in the southwestern part of Garvin county, near the point where Garvin, Carter, and Stephens counties come together. The defendant and his brother Roy Dixon and another brother, "Red" Dixon, who was somewhat older than either of the two brothers jointly charged with this murder, were all attending this dance, as was also the deceased, Francis Pierce, and his brother Don Pierce. Roy Dixon was drinking considerable, and it is, we think, a fair inference that perhaps all of these parties were drinking to some extent. The trouble first started with a fight between Roy Dixon and Don Pierce, in which fracas

Roy Dixon was knocked down by the deceased, Francis Pierce, and either the blow struck by Pierce on the head of Dixon, or the fall of Dixon against some object, cut his head, and "Red" Dixon and John Dixon took Roy Dixon out of the house and washed and dressed his head. While the Dixons were out of the house dressing Roy's head, the dance was resumed again, and Francis Pierce continued to finish out the set with Mrs. Ott White, at whose house the dance was being given. After Roy Dixon's head had been dressed, he and John Dixon returned to the house and went into the east room where the dance was in progress. According to the state's evidence, as soon as the opportunity presented itself, Roy Dixon renewed hostilities with the deceased, Francis Pierce, and another affray started, in which Roy Dixon and Francis Pierce were fighting across the room. In this affray somebody drew a pistol and shot Francis Pierce through the intestines, the ball going clear through the body and into the arm of a man by the name of Lyle, who was playing a guitar for the dance. The state's witnesses say that John Dixon fired this shot. The witnesses for the defense say that John Dixon did not fire the shot, but that John Dixon was standing in the doorway between the east and west rooms of the house talking to Monroe White, who was the father of Ott White.

There is some evidence also to the effect that John Dixon had an automatic pistol on his person on that night, and that, when the first difficulty occurred between Roy Dixon and Don Pierce, John Dixon drew this pistol out of his pocket and said, "Let me to the son of a bitch." It is undisputed that immediately after this fatal difficulty both John Dixon and Roy Dixon left the premises. It is further contended on the part of the defendant that Francis Pierce was armed on that occasion, and that he

struck Roy Dixon over the head with a gun and knocked him down during the first difficulty.

Counsel for the defendant in their brief say that there are no involved questions of law in the case. The issue was simple. Either, as testified to by state's witnesses, John Dixon shot and killed Francis Pierce, or else his brother Roy Dixon did it, aided and abetted and encouraged by this defendant, John Dixon. In either event the defendant would be guilty. On the other hand, according to the testimony of defendant's witnesses, this defendant did not fire the fatal shot and was not in any way responsible for the firing of the shot that killed Francis Pierce.

It is contended first that the trial court erred to the prejudice of the defendant in permitting counsel for the state, in the direct examination of the state's witnesses, to ask numerous leading and suggestive questions. A careful examination of the evidence complained of by the defendant leads to the conclusion that the questions were not leading or suggestive and could not have been prejudicial to the right of the defendant.

In the case of Campbell v. State, 23 Okla. Cr. 250, 214 Pac. 738, 739, this court said:

"The scope and the manner of the examination of witnesses are matters that necessarily must be left largely to the discretion of the trial court. Where leading questions are permitted to be asked a witness, there must appear to have been an abuse of discretion by the trial court, resulting to the prejudice of the defendant."

To the same effect are the following cases: Taylor v. State, 27 Okla. Cr. 165, 225 Pac. 988; Lee v. State, 7 Okla. Cr. 149, 122 Pac. 1111; Winfield v. State, 18 Okla. Cr. 257, 191 Pac. 609.

It is next contended that the trial court erred in depriving the defendant of his right of cross-examination as to certain witnesses introduced by the state. The questions asked by the defendant on cross-examination had been fully answered by the witnesses. Furthermore these questions were full of insinuations not supported by the evidence. Upon objection of the state, the court refused to permit the defendant to pursue that line of questions further. The trial court certainly had a right to sustain objections to questions that had been previously answered in order to save time and expense, and also had the right to refuse to permit the defendant to continue to ask questions which had already been answered by the witness.

It is next contended that the trial court erred in failing to limit the jury to a consideration of evidence offered by the state for impeachment purposes by a proper instruction to that effect. It is not contended that any request was made for any such instruction, either written or orally. In the absence of such request, it was not error for the trial court to fail to instruct along that line. Coker v. State, 26 Okla. Cr. 230, 223 Pac. 711; Hopkins v. State, 28 Okla. Cr. 405, 231 Pac. 97; Motsenbocker v. State, 29 Okla. Cr. 305, 233 Pac. 487; Wise v. State, 34 Okla. Cr. 284, 246 Pac. 656; Klaber v. State, 35 Okla. Cr. 238, 250 Pac. 142; Roberts v. State, 36 Okla. Cr. 28, 251 Pac. 612; York v. State, 40 Okla. Cr. 312, 269 Pac. 323.

The defendant next contends that the court erred in permitting the state's witnesses to give improper and incompetent testimony in rebuttal in an attempt to impeach the defendant on a collateral issue. The question of the credibility of any particular witness is a matter material to every criminal case. It is a question the jury has to pass on in every trial in order to weigh the facts. That

a witness may be impeached on any material matter by showing that he made contradictory statements out of court to those he made at the trial is clearly established as a rule of evidence. De Bose v. State, 18 Okla. Cr. 549, 197 Pac. 176; Freels v. State, 18 Okla. Cr. 456, 195 Pac. 1094; Douglas v. State, 19 Okla. Cr. 257, 199 Pac. 927.

The state had the right, therefore, to show that the defendant and the witness Mrs. Ott White made contradictory statements to that which they testified to in their direct examination. This was a matter that affected the credibility of the defendant and the witness, Mrs. Ott White, and as such was material and competent for impeachment purposes. The evidence would have been admissible for the further reason that the defendant had opened the issue.

The deceased, Francis Pierce, was shot down and killed at a time when he was apparently doing nothing to justify this killing. This defendant either fired the fatal shot, or else he actively aided and abetted his brother in the commission of the crime. When they returned into the house and renewed hostilities with Pierce armed with a deadly weapon, and used that weapon upon him, they forfeited the right of self-defense, and could have been convicted of murder instead of manslaughter in the first degree.

The errors complained of by the defendant are either technical, not supported by the record, or without prejudice to the substantial rights of this defendant.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.