## JASPER HAWKINS v. STATE.

No. A-8590.   Feb. 27, 1934.
Rehearing Denied April 6, 1934.
(32 Pac. [2d] 101.)

H. J. Mackey and Clark & Gilbreath, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, Jasper Hawkins, hereinafter referred to as defendant, was convicted in the district court of Oklahoma county of the crime of obtaining property by false pretenses, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of three years.

It was the contention of the state that the $3,000 of building and loan stock and the two city lots involved in the purchase of the last one-half of the property were obtained by the false pretenses of defendant that he had applied the $2,000 received when the first half was purchased to reduce the indebtedness to $4,600, and in support of this charge the evidence is:

That in January, 1932, defendant, who had resided in Oklahoma for about 25 years, was a contractor and real estate dealer or speculator; that there lived at Springdale, Ark., Albert Price, another real estate dealer; that H. W. Gripple was the owner of 80 acres of land about six miles west of Rogers, Ark., and two miles southwest of Bentonville, known as the Gripple farm; that Gripple had owned this farm for 36 years and disposed of it about 1930; that the title to the farm had changed hands several times through real estate deals and trades engineered by Price; that Price himself had a deed to this property, but had never put it of record; that there were two mortgages on the place, one for $4,000 and one for $2,250; that the $2,250 note had been overdue since November, 1930, and the $4,000 note would be due December 1, 1932, and that the interest on both mortgages was past due and taxes

for 1930 and 1931 unpaid and the place sold for taxes; that B. D. Pilley, complaining witness, had been engaged in the grocery business in Oklahoma City for a number of years and had known defendant; that defendant induced Pilley to go with him and look at the place and, through Price, sold him an undivided half interest in the place for $2,000 cash, subject to an incumbrance of $4,600, of which Pilley and defendant were each to become liable for one-half; that defendant represented to Pilley that he would pay the mortgage down to that amount, and that he had to have the $2,000 in cash and would immediately apply the same to paying off the second mortgage, which was about to be foreclosed. Pilley is corroborated in this by a statement in the contract of purchase that the amount due was $4,600; a short while after Pilley purchased the undivided half interest, Price and defendant began negotiations to sell him the other half, and did succeed in making the deal with him, he giving defendant a $3,000 certificate of stock in the Local Building & Loan Association and two lots in Oklahoma City; that defendant had Pilley assign the stock to his brother and cashed it the day the deal was made; that this second deal was consummated in Oklahoma City; that the deed from Hawkins to Pilley also stated the unpaid balance of the indebtedness was $4,600, when in truth and in fact defendant had paid no part of either of the mortgages; that they were both in default and foreclosure proceedings started shortly after Pilley completed the deal. It is apparent from the record that this inexperienced grocer fell into the hands of a couple of real estate sharks who not only obtained the $2,000 cash, but also obtained $350 more cash, $3,000 building and loan stock, and two Oklahoma City lots for their equity in a farm which evidently was not worth the amount of the mortgages, and that this deal was consummated because

of the false pretenses and overreaching of defendant, assisted by Price.

The first error complained of is that the court erred in admitting incompetent, irrelevant, and immaterial testimony offered by the state and objected to by defendant.

The particular objection is directed to the fact that, while the information alleged B. D. Pilley was the owner of the building and loan stock, yet the exhibit showed it was in the joint names of B. D. Pilley and Minnie Pilley, his wife, as joint tenants, that the assignment appearing on the stock showed that Minnie Pilley was still living, and that therefore there was a fatal variance between the proof and the crime charged, and did not tend to prove the crime charged for the reason the information charged B. D. Pilley was the owner of the building and loan stock.

The contention of defendant seems to be that the state must prove ownership as alleged, and to admit in evidence building and loan stock after proof that it was jointly owned by Pilley and his wife, when the information charged ownership in Pilley alone, constituted a material variance between the allegations and the proof and was prejudicial to defendant.

In a prosecution for obtaining money by false pretenses the allegation of ownership is material only where such allegation is relied on solely to identify the criminal act. In this information the property obtained is identified by the allegation "Local Building and Loan Association fully paid stock Certificate No. 21606 of the value of $3,000.00."

In Ireton v. State, 29 Okla. Cr. 266, 233 Pac. 771, this court said:

"When an offense is charged in an information with sufficient certainty in other respects to identify the act,

an erroneous allegation as to the person injured is not material."

Section 2560, C. O. S. 1921, provides:

"Where an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

Thus it appears that this court, in construing section 2560, supra, has already decided a like question raised in the case of Ireton v. State, supra, adversely to the position here taken by defendant.

It is next contended the court erred in overruling the demurrer to the evidence at the close of the state's case. This contention is based upon two grounds:

First. That the evidence disclosed Pilley had in his possession an abstract delivered to him by defendant, showing the entire indebtedness against the property, and that this abstract was introduced in evidence.

It appears from the record the abstract was brought down to February 20, 1932, at 2 o'clock p. m., while the false pretenses here relied on were not made until the 15th day of March, 1932, and the very substance of the pretenses is that on March 15, 1932, defendant had reduced the indebtedness against the farm to $4,600, like he had promised to do on February 20, 1932, with the $2,000 given him by Pilley. Of course, what the abstract would disclose as the condition of the indebtedness on February 20, 1932, would cast no light upon the truth or falsity of defendant's statement as to what the indebtedness was on March 15, 1932.

The material inquiry in the trial was, Did defendant make this statement of an existing fact on March 15,

1932? Was such statement false? Did Pilley rely on it as being true, and was Pilley, by reason of such statement, induced to part with his property? If so, defendant is guilty, and the conviction should stand irrespective of any notice Pilley may be charged with as to the condition of the indebtedness on February 20, 1932.

The second contention under this assignment of error is that by the terms of section 3072, O. S. 1931, the evidence of a complaining witness must be corroborated by two witnesses, unless the pretense or some note or memorandum thereof be in writing, either subscribed by or in the handwriting of the defendant.

It appears from the record that on March 15, 1932, when the false pretenses complained of were made and relied on, defendant executed a warranty deed and duly signed and acknowledged the same, which deed recites the transaction was made "subject to two mortgages totaling $4,600." This evidence meets the requirements of section 3072, supra, and was sufficient to take the case to the jury.

Finally, it is contended the judgment should be set aside because the trial judge failed to instruct on the provisions of section 3072, O. S. 1931.

It is admitted that no request was made for such an instruction; neither was any exception taken to any instruction given by the trial judge. The attorney who represented defendant in the trial court evidently believed the requirements of section 3072, supra, were fully met as far as the evidence was concerned, and therefore saw no good reason to request an instruction on that theory of the law.

In Roberts v. State, 36 Okla. Cr. 28, 251 Pac. 612, 614, this court said:

"The defendant complains that the court failed to instruct the jury on certain conclusions that might be inferred from the evidence. It is the duty of the court, without request, to instruct the jury upon all of the essential issues raised by the evidence, but, where no omission is pointed out, the trial judge need not submit an instruction on every question of law that might be involved, or touching upon every remote deduction that might be drawn from the evidence. Often too many instructions tend to make the instructions, as a whole, confusing, instead of elucidating the pertinent issues involved. Hopkins v. State, 28 Okla. Cr. 405, 231 Pac. 97; Coker v. State, 26 Okla. Cr. 230, 223 Pac. 711; Newcomb v. State, 23 Okla. Cr. 172, 213 Pac. 900; Thompson v. State, 26 Okla. Cr. 121, 222 Pac. 568; Horn v. State, 31 Okla. Cr. 347, 238 Pac. 966."

Certainly in the absence of any request for such an instruction this court would not hold that the defendant was prejudiced by the trial court's failure to instruct under section 3072, supra, where the evidence on the part the state fully complies with the requirements of said section and it is apparent that defendant could not have been prejudiced by the same.

A careful examination of the record discloses no substantial error.

The evidence being sufficient to support the verdict of the jury, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.