Danny CHASE, a/k/a Donny Chase, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–317.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1975.

Rehearing Denied Nov. 4, 1975.

Raymond Burger, Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Danny Chase also known as Donny Chase, whose true and correct name is Raymond Jaynes, hereinafter referred to as defendant, was charged, tried and convicted of the crime of Obtaining Money Under False Pretenses, in violation of 21 O.S. §§ 1541.1 and 1541.2, in the District Court, Garfield County, District Court case No. 3497. Judgment was entered in accordance with the verdict of the jury and he was sentenced to serve a term of one (1) year in the State penitentiary. From that judgment he appeals.

For reasons irrelevant to this decision there was a delay of several years between the time the information was filed in this case and the time the defendant came to trial. In 1967, the prosecuting witness, Della Holderman, was an 80-year-old widow who lived alone on a farm. On October 13, of that year, she paid one Richard Phillips $199.40, by check, for installing lightning rods on her house. Several days

later, on October 19, she was visited by a man she identified as the defendant and a companion who gave her to understand that they had come to inspect the installation of those rods. Mrs. Holderman testified that defendant introduced himself to her as Frank Mills and that he referred to his companion as "Joe." Being assured that the service was without charge, Mrs. Holderman authorized the defendant and his companion to inspect the lightning rod system and "to do whatever needed to be done." (Tr. 100) While "Joe" worked outside, the defendant and Mrs. Holderman had a friendly conversation in her kitchen; the witness testified that the defendant "seemed a nice guy and I enjoyed visiting with him." (Tr. 106) After an hour and a half had passed the defendant conferred with his companion and then told Mrs. Holderman that 72 feet of new rod had been installed on her barn and that she owed him $1,200.00. When she expressed her dismay at so large a sum, he reduced the price to $960.00, which she paid by writing a check to the order of Frank Mills. After the men left, she called the bank upon which the check was drawn and asked that it be paid. Sometime later, however, she was concerned enough about the transaction to call her lawyer and explain what had happened. As a result, Bill Henderson, Deputy Sheriff of Garfield County, was sent to Mrs. Holderman's farm to investigate the complaint of a lightning rod fraud case. He testified that his inspection of Mrs. Holderman's property, which was made on the same day as the transaction in question, revealed that no new rod material had been put on the barn. The bank employee who received Mrs. Holderman's phone call, Maxine Evans, testified that on October 19 she cashed the check for a man whom she identified as the defendant. She stated that he endorsed the check as Frank Mills and received a cashier's check for the amount in that name. There were no further witnesses for the State.

The defendant's wife, Marilyn Jaynes, testified that after this charge was filed she had a conversation with Mrs. Holderman wherein that lady told her that she had found the defendant to be "real nice" and that she had "really liked him." (Tr. 140) As the result of arrangements made between the two women during that conversation, Mrs. Jaynes paid Mrs. Holderman $1,200.00 in restitution for the money taken from her and expenses incurred. The defendant took the stand in his own behalf and testified that he did go to Mrs. Holderman's farm on the date in question to sell her a lightning rod system. He stated that he was with his immediate supervisor, a man named Frank Mills, and denied that he had introduced himself as Frank Mills. He explained that he called his companion "Joe" because his name was Frank Joe Mills. He testified that he did, in fact, install 72 feet of lightning rod material on Mrs. Holderman's property and that $960.00 was a fair price for the material and labor which Mrs. Holderman willingly agreed to pay. The defendant stated that he and Frank Mills immediately went to the bank to cash the check and that Frank Mills endorsed it. He then testified that in return for the check he, not Frank Mills, received a cashier's check. That cashier's check was drawn to the order of Frank Mills. The defendant testified, however, that it was he who cashed the check in order to pay Mr. Mills his share of the money. The defendant also testified that he had in the past used the name Donny Chase. He explained that the reason he had employed an alias was because his driver's license had been revoked and that he had used the false name to obtain another license.

■ The assignment of error argued in defendant's first proposition does not merit discussion in this opinion because it is one that is entirely unsupported by citation to authority and that raises no question of deprivation of a fundamental right. Under such circumstances, as we have often re-

peated, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. *Sandefur v. State*, Okl.Cr., 461 P.2d 954 (1969).

In his second proposition, the defendant complains of two instances of what he asserts is misconduct on the part of the prosecutor which so prejudiced his right to a fair trial as to merit reversal of this case. The first such instance concerns a series of questions put to the defendant on cross-examination about his use of certain alias names. In support of his argument that these questions were improper, the defendant cites *Neely v. State*, 60 Okl. Cr. 99, 61 P.2d 741 (1936) and *Love v. State*, Okl.Cr., 360 P.2d 954 (1961), two of a long line of cases from this Court which make clear that we will not countenance that tactic of an over-enthusiastic prosecutor which consists of the repeated asking of incompetent questions for the purpose of intimating to the jury something which is not true or which is not capable of being proved true. We do not find that line of authority to be persuasive under the circumstances presented here. At trial the defendant answered the questions concerning his use of several specific aliases equivocally, stating that he did not recollect, that he did not recall, and he does not now assert that the prosecutor acted in bad faith in referring to those aliases. We might begin by pointing out that when the accused takes the witness stand in his own behalf the State may cross-examine him with the same latitude as any witness, *Martin v. State*, 94 Okl.Cr. 340, 235 P.2d 959 (1951), and that the scope of the direct examination may be exceeded when the purpose is to test credibility and veracity. See, *Bewley v. State*, Okl.Cr., 404 P.2d 39, 41 (1965), quoting Wharton's Criminal Evidence, Vol. 3, at page 266. Also, a trial court has broad discretion in setting the limits of cross-examination when the purpose is to discredit the veracity of a witness. *Bewley v. State*, supra, 404 P.2d at 41. We do not find that discretion to have been abused in this case for two reasons. First, when the defendant not only denied using the alias Frank Mills on the day in question but proceeded gratuitously to explain why he had used the name Donny Chase, he left the clear implication that that second alias was the only one he had ever used. In so doing he opened the door to the prosecution to contradict or rebut that testimony which he gave in-chief. See, *Fite v. State*, Okl.Cr., 526 P.2d 956 (1974). Secondly, under the circumstances of this case, we think the issue of the use of false names bore directly enough upon this witness' veracity so as to outweigh any prohibition against cross-examining the defendant-witness about particular bad acts other than convictions of a crime. The second instance of prosecutorial misconduct complained of occurred during the closing argument by the prosecutor. The comments which are here claimed to constitute plain error consisted of references to the defendant as representative of "the con men of America" who are characterized as "parasites that live . . . off the young, the poor, the unhealthy, the infirm . . . ." We agree that the right of argumentation contemplates a wide range of discussion and illustration and that counsel for the prosecution, as well as for the defendant, is entitled to reasonable latitude in drawing inferences from the record. This does not mean, however, that the prosecutor may comment at length concerning the social consequences of the particular crime, or attempt to make the individual defendant bear the burden of guilt for an entire group of wrongdoers. We disapprove of such comments. See, *Sizemore v. State*, Okl.Cr., 507 P.2d 1330 (1973); *Coker v. State*, 26 Okl.Cr. 230, 223 P. 711 (1924). On the other hand, the reference complained of was brief; the evidence in the case strong; and the defendant was given the minimum sentence.

Therefore, there is no error necessitating reversal here.

■ Defendant's third and final proposition argues that the evidence in this case is insufficient to sustain a conviction of obtaining money under false pretenses in violation of 21 O.S. § 5441.1. The essence of his argument is that the State failed to prove that the victim reposed confidence in the defendant and parted with her money in reliance upon the false statements he made. In this case there are several points in the prosecuting witness' testimony, both on direct and on cross-examination, when she states that she was afraid of the defendant, and that she was suspicious during the transaction. We are unpersuaded by this attack upon the sufficiency of the testimony. Mrs. Holderman, the prosecuting witness, was an 86-year-old woman testifying about a transaction that had occurred some years earlier. Her statements concerning the external facts of the transaction are clear and consistent; her statements concerning her emotions, however, are at times confused and contradictory. She testifies both that she liked and trusted the defendant and that she was suspicious and fearful of him. She also testified that some time after the men left her house she knew she had been cheated and was very ashamed. We find her testimony entirely adequate to present to the jury the question of whether or not she relied upon the false pretense of the defendant and parted with her money because of it. See, *Ireton v. State,* 29 Okl.Cr. 266, 233 P. 771 (1925); *Smith v. State,* 7 Okl.Cr. 136, 122 P. 732 (1912).

We conclude that each of defendant's contentions lack substantial merit. Accordingly, the judgment and sentence appealed from is *affirmed.*

BUSSEY, J., concurs.