### NELSON JELTS v. STATE.

No. A-1404. Opinion Filed May 16, 1912.
Appeal from Pottawatomie County Court;
Ross F. Lockridge, Judge.

Nelson Jelts was convicted of violating the prohibitory law, and appeals. Reversed.

G. A. Outcelt, for plaintiff in error.

Smith C. Matson, Asst. Atty. Gen., and C. J. Davenport, for the State.

PER CURIAM. The plaintiff in error, Nelson Jelts, was convicted at the July, 1911, term of the county court of Pottawatomie county on a charge of having unlawful possession of whisky with the intent to sell the same, and his punishment fixed at imprisonment in the county jail for a period of ninety days and a fine of one hundred fifty dollars. It appears from the record that a number of raids had been made by the officers on the place of business of the accused, who is a negro, but no intoxicating liquors were found. Upon the date this offense is alleged to have been committed, William Davis, a police officer in Shawnee, went to the place about daylight and searched the premises, but found nothing. He was informed by another negro named Harris that he would find whisky at a certain spot in the rear of the premises occupied by the accused. Following the directions of the negro Harris, a box containing intoxicating liquors was found a short distance in the rear of the accused's place on the Rock Island right-of-way, covered up with straw, cinders, and other materials. It appears that Harris and the accused were enemies. At the time the whisky was found, prosecuting witness Davis testified that the accused came out and offered him fifty dollars to leave the whisky and say nothing about finding it. The accused denied this statement and said that he told the officer that he wouldn't have had it found there for fifty dollars, that it was not his, and that he knew nothing about it. Counsel for the accused offered to show by deputy sheriff Tilghman, while he was on the stand as a witness for the accused, that the negro Harris had been to him and offered to "put up a job" on Nelson Jelts, in order that Jelts might be arrested and convicted for violating the prohibitory law, stating that he would give fifty dollars to have the transaction carried out; that the witness Tilghman refused to have anything to do with such a transaction; and that Harris then stated that he would get the complaining

witness to help him out; that this Harris was the same party who pointed out the liquor to the prosecuting witness Davis. Counsel further offered to show by Louis Smith that the same Harris told him that he had put up a job on Nels Jelts; that he had put some whisky at the place pointed out for the purpose of catching the accused and having him charged with unlawful possession of intoxicating liquor. The state objected to the introduction of this testimony. The objection was sustained, and exceptions properly saved. When the accused was on the stand, the assistant county attorney, on cross-examination, was permitted to indulge in the following character of examination:

"Q. Now, you had paid a fine over in the city court in Shawnee? (Defendant objects as irrelevant, incompetent and immaterial. Objections overruled by the court, to which ruling of the court the defendant excepted.) A. No, sir. Q. Did you pay any fines there for gambling and bootlegging? A. No, sir. Q. Did you pay a fine for gambling? A. No, sir. Q. How many fines have you paid to the city court in Shawnee? A. I never paid any. Q. Have you paid a hundred? A. Have I paid a hundred? Q. Yes, sir. A. I don't think so. Q. How many have you paid? (Defendant objects as irrelevant, incompetent, and immaterial. Objections were overruled by the court, to which ruling of the court the defendant excepted.) A. No, sir. Q. I will ask you if you know anything about a system you joined to plead guilty regularly and pay a fine? A. I never joined any system. Q. How many fines have you paid then? (Defendant objects as irrelevant, incompetent, and immaterial. Objections were overruled by the court, to which ruling of the court the defendant excepted.) Q. Did you pay as many as fifty? A. No, sir. Q. As many as twenty-five? A. No, sir. Q. Did you pay as many as a dozen? A. I don't know anything about what you are talking about. Q. Did you pay a fine for gambling? A. No, sir. Q. Did you ever pay a fine? A. I have paid a fine, yes, sir. Q. How many have you paid from statehood up to the present time? A. How many fines have I paid? Q. Yes. A. I don't know, sir. Q. You paid a fine for running a gambling house at the place we are talking about? A. No, sir. Q. You did not pay a fine for that? A. No, sir. Q. You paid a fine for gambling in there? A. No, sir, I never did. Q. You say you never did buy retail liquor license? A. No, sir. Q. I will ask you if it isn't a fact that during the month of April—April 16th—1909, if you took out a federal liquor license, as a requirement of retail liquor dealers in the city of Shawnee, running to July, 1909, and pay twenty-five dollars for it? A. No, sir. Q. That is not a fact? A No, sir; I didn't pay no twenty-five dollars. Q. You testified in Maben's case? A. Yes, sir, I did. Q. Maben was prosecuted for bribery? A. Yes, sir. Q. Did you testify for the state or the defendant? A. The state had me. Q. You testified that you had been bootlegging? A. No, sir. Q. Didn't you testify that you had been paying the officers for the privilege of selling whisky? A. No sir."

There is other prejudicial cross-examination disclosed by the record. This court has always been exceedingly liberal with the prosecuting attorneys of this state, and endeavors always to uphold every proper conviction brought here on appeal. But a prosecuting attorney should not permit his high office to be prostituted in the interest of malice or oppression. He should not be guilty of indulging in the character of examination disclosed by this record. It does not make any difference how guilty a man is, he ought to be tried in a fair and impartial manner, and according to law. Prosecuting attorneys are not charged with the duty of securing convictions by improper methods. They should see that substantial justice is meted out in the manner provided by law, and no

conviction should be sought or demanded unless it can be had by compliance with the safeguards and rules established to prevent oppression. A conviction had under the circumstances disclosed by the record under consideration cannot be sustained. The judgment of the trial court is reversed, and the cause remanded with direction to the trial court to grant a new trial according to law.