Shirley BALL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13148.

Court of Criminal Appeals of Oklahoma.

Oct. 10, 1962.

Claude Hendon, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jim Barnett, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Shirley Ball, the Plaintiff in Error, and hereinafter referred to as defendant, was charged by Information in Pottowatomie County with the crime of Burglary in the Second Degree. She was tried before a jury, found guilty, and sentenced to a term of two years in the State Penitentiary.

Defendant lodged her appeal in this Court within the time prescribed by law asserting three assignments of error. This opinion considers two of them meritorious and they will be herein discussed.

The defendant was apprehended inside the Shawnee Country Club Building about 4:20 A.M. A merchant policeman who was patroling the area discovered that the building had been broken into. As he approached the door, he heard voices inside. He entered and discovered the defendant bending over by a table and he told her to put her hands up. She complied, and as she did, the other subject made his escape through the basement door. The office safe was open, some tools lying on the floor and a money bag was lying on the table. It had been removed from the safe. Defendant contended that earlier that evening she had met Jimmie Gaines at a drive-in. She had become acquainted with him two years before, through her husband. She had pulled in the drive-in to eat, and Jimmie Gaines had asked her to go with him to Midwest City, where they went to Potters Drive-In. When she asked him to take her home, he refused, claiming he had some business and taking her home would be out of the way. He drove from there to Shawnee, and stopped out in the country and forced her out of the car. She saw a pistol on the defendant and was afraid not to obey his orders. They went down through a gully, Gaines practically dragging her. They came to a barbed wire fence and Gaines picked her up, putting her across the fence. They came upon the Shawnee Country Club and he had her wait downstairs, then he said "come on". Then he ordered her to go inside. When the officer arrived, Gaines ran out the basement door

and she was apprehended. She claims she had nothing to do with breaking in the place, and she obeyed his orders because she was afraid of Gaines. He was armed and she was moving under duress and fear. In substance, this constitutes the facts upon which the criminal charge was filed. Defendant charges that she was denied a fair and impartial trial in that the State, over the objection of defendant, adduced incompetent testimony which was prejudicial to the defendant. The testimony complained of, was presented in the following manner:

"Q. Let's see, you say your husbands name is Ball?

"A. Yes, sir.

"Q. And he is in the penitentiary?

"A. Yes, sir.

"Q. O. K., what did he go to the penitentiary for?

"MR. HENDON: We object to that as irrelevant, incompetent, and immaterial.

"THE COURT: Overruled, this is cross-examination.

"MR. HENDON: Exceptions.

"THE COURT: This is cross-examination.

"MR. HENDON: Exceptions.

"Q. (by Mr. Winterringer) What did he go to the penitentiary for?

"A. He went for illegal possession of dolophine.

"Q. Of what?

"A. Dolophine.

"Q. What's dolophine?

"A. Narcotics.

"Q. How old is he?

"A. 31.

"Q. First time he has been in the penitentiary?

"MR. HENDON: We object to that as being irrelevant, incompetent, and immaterial, and move the court to strike it from the consideration of the jury.

"THE COURT: Overruled.

"Q. The first time he has ever been to the penitentiary?

"A. No, sir.

"Q. What else did he go to the penitentiary for?

"MR. HENDON: May we have, if the court please, have objections to all this line of further questioning for the reason that it is prejudicial, irrelevant, incompetent and immaterial?

"THE COURT: Overruled.

"MR. HENDON: Exceptions. And may we, without interrupting the court, have our objections carried to all further testimony along this line?

"THE COURT: Show counsel's objections carried, overruled, and exceptions.

"Q. (by Mr. Winterringer) What else was your husband sent to the penitentiary for?

"A. Grand Larceny.

"Q. Grand Larceny, anything else?

"A. He did some federal time when he was younger, but I do not remember what for.

"Q. Narcotics charge?

"A. No sir, I don't believe so."

█ This testimony was wholly incompetent and had no place in the trial. The reputation of the defendant's husband had nothing to do with the charge against the defendant. The fact that her husband, brother, or cousin had been sentenced to prison several times would have no legitimate bearing on the case. It would only tend to depict her as a person *condemned by association*. The Attorney General contends that the matter was opened up by the defense counsel and therefore he had no right to complain. On direct examination, defendant was asked by her counsel: "Where is your husband at the present time?" She answered "In the penitentiary." This no doubt explained the absence of her husband, but it is as far as the matter should have gone. To permit the County Attorney to go into the detail of how many times he had been in the penitentiary or the type of crime he was convicted of, was incompetent and only served to prejudice the defendant. This Court said in the case of Jelts v. State, 7 Okl.Cr. 733, 123 P. 1130:

"In the examination or cross-examination of witnesses, it is highly improper for attorneys to ask questions which suggest unfair inferences, either on one side or the other, and such conduct should not be permitted by the trial court.

"Every defendant in a criminal case is entitled to fair treatment on his trial, and a prosecuting attorney should not be permitted to ask question which he knows to be illegal for the purpose of prejudicing the defendant, or to make remarks in the examination of a witness which contain unfair reflections upon the defendant. In the examination of witnesses, he should confine himself exclusively to developing legal evidence against the defendant, and should reserve his comments on the testimony for his argument to the jury; and it is the duty of trial courts to rigidly enforce this rule."

We think the rule is applicable herein and under the circumstance, the cross-examination constituted reversible error.

█ Defendant further complains that the County Attorney was guilty of improper argument in his closing argument to the jury. That portion of the argument complained of was as follows:

"We've got to protect our property in Pott County and if you Ladies and Gentlemen should see fit to acquit this girl, after the State has proved that she was inside, inside the building, next to an open safe, you will give a license to every Oklahoma City thug * * * she knows, by her own testimony * * * a license to come over here and burglarize us * * * that's just exactly what it will amount to. If you acquit this girl, it would be a license for ev-

erybody over there to come over here in Pott County and say 'they won't convict you' * * * 'they won't convict you at all when you get caught in a building with two things on your person' * * * that's the reason you have got to find her guilty, is to protect our property. * * *"

And the further argument which defendant contends was prejudicial:

MR. WINTERRINGER: (referring to defense counsel) "He says it was an inside job and all bartenders are usually reluctant to tell where it was * * * that's right, I'd be reluctant too, if I had a convict, as anybody who could tell * * *".

Upon objection the Court sustained it and admonished the jury not to consider it. These arguments are highly improper and in close cases may prejudice the defendant to the extent of making the difference between a verdict of guilty and acquittal. In this regard, the Court said in Turpen v. State, 89 Okl.Cr. 6, 204 P.2d 298:

"Counsel for state and defendant are entitled to great latitude of expression in presenting arguments to jury, but such latitude given to counsel does not authorize use of prejudicial statements calculated to inflame passion of jury."

In Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643, the County Attorney used very similar arguments in that the defendant was a resident of McAlester and committed the crime in Latimer County. The County Attorney referred to this, saying that "If defendant had stayed in Pittsburg County, the taxpayer of Latimer County would be several hundred dollars better off."

The Court had this to say:

"This was not an arguable issue in the case which was palpably plain to counsel, and could have been made only for the purpose of prejudicing the jury. Appeals to prejudices based upon a jurys county loyalty to a resident decedent * * * as against a defendant a resident of an adjacent county, com-

bined with an appeal to the jury's normal antipathy to paying taxes could only be calculated to prejudice the defendant."

 Defendant's contention that a demurrer to the Information should have been sustained is without merit. We do not uphold it as a model, but it is sufficient under the decisions of this Court to withstand the demurrer.

We would suggest that the County Attorney familiarize himself with the case of Simpson v. State, 5 Okl.Cr. 57, 113 P. 549, as to the essential elements of an Information charging such a crime.

For the foregoing reasons discussed herein, the judgment and sentence of the trial court is by this decision, set aside and the cause is Reversed and Remanded for a new trial in accordance herewith.

BUSSEY and BRETT, JJ., concur.