**Charles William DAVIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–140, F–78–141.**

Court of Criminal Appeals of Oklahoma.

May 9, 1983.

---

Robert A. Ravitz, Asst. Public Defender, Oklahoma County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Tomilou Gentry Liddell, Legal Intern, Oklahoma City, for appellee.

## OPINION

POWERS, Special Judge:

The appellant was convicted of Murder in the First Degree and sentenced to death in Oklahoma County cases no. CRF–77–2905 and 2906. The jury assessed the death sentence after finding the following three (3) aggravating circumstances in each case: that the murder was especially heinous, atrocious or cruel; the defendant was previously convicted of a felony involving the use or threat of violence to the person; the defendant knowingly created a great risk of death to more than one person. On March 16, 1978, the Honorable David M. Cook imposed the judgments and sentences, and the sentences of death were stayed by this Court in its Order of March 23, 1978, pending the resolution of this appeal. Oral argument was heard by this Court on August 31, 1981.

The two victims of an early morning shooting on August 13, 1977, at the appellant's apartment in Oklahoma City, were Dennis McLaughlin and Robert Wayne Jones. Wounded but not killed during that same incident were Kathy Jones Rogers, also known as Kathy Jones Davis, and Henry Jones. A total of six (6) bullets were fired from the .38 caliber revolver.

Three days prior to the homicide, the same four individuals met with the appellant at a Humpty Dumpty store parking lot in Sapulpa, apparently with reference to the marital separation of Kathy Rogers and the appellant. Robert Jones and Henry Jones, Kathy's brothers, and Dennis McLaughlin, their friend, accompanied Kathy to the Sapulpa meeting.

The group then appeared at the appellant's apartment early on Saturday morning, August 13, to remove Kathy's possessions from the apartment of her estranged husband. Kathy Rogers and Henry Jones testified that the four first stopped by the Oklahoma City Police station to obtain protection in their visit to the appellant's apartment, but they were unsuccessful. After all of Kathy's property had been removed from the premises, the four returned to the apartment for a final survey, and it was at this point that the appellant shot them.

In his first proposition of error, the appellant maintains that the trial court denied him his right to present mitigation in his behalf and deprived him of due process and equal protection of the laws when the court failed to provide funds for expert witnesses or to give him a presentence investigation.

This Court has held that there is no right to State funds to hire an investigator or a psychiatrist to present mitigating factors on behalf of a defendant. *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980). The right to counsel is guaranteed by the Constitution, but that right has not been interpreted to include expert assistance in the determination of appropriate punishment. Furthermore, the appellant's assertion that the court should have granted the requested presentence investigation report is without merit. The purpose of the presentence investigation is to provide "... a recommendation as to appropriate sentence, and specifically a recommendation for or against probation." Laws 1975, ch. 369, § 1; now 22 O.S.Supp.1980, § 982. That statute specifically excludes those cases in which the death penalty is imposed. And this Court has held that the denial of pretrial motions for a presentence investigation report and appointment of a psychiatrist in a case in which a defendant has been sentenced to death was not error under this statute. *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980), reaffirming *Bills v. State,* 585 P.2d 1366 (Okl.Cr.1978).

The appellant alleges, in his second argument, that the jury was selected in violation of the standards mandated by the United States Supreme Court. Certain jurors were excluded for cause, over the objection of defense counsel, as a result of their beliefs regarding the death penalty.

In *Witherspoon v. Illinois,* the Supreme Court held "... that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply be-

cause they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), at 391 U.S. at 521–522, 88 S.Ct. at 1776, 20 L.Ed.2d 784–85. In a footnote to that opinion, the Court said, "The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge...." Footnote 21, at 391 U.S. 522, 88 S.Ct. 1777, 20 L.Ed.2d 785.

In the case before this Court, the trial court systematically asked the jurors two questions as follows:

> In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty?

If the juror's reply was negative, the court asked:

> If you found beyond a reasonable doubt that the Defendant in this case was guilty of Murder in the First Degree, and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the Death Penalty such that regardless of the law, the facts and the circumstances of the case, you would not inflict the Death Penalty?

■ The appellant contends that in excluding several of the jurors the trial court violated the rule in *Witherspoon*. A review of the record indicates that Juror Rockel was properly excluded due to her inability to positively answer that she could inflict the death penalty under the appropriate circumstances. Furthermore, the following jurors were properly excluded: Hood, Childress, Silloway, Derrick and Hearst. However, the exclusion of three others requires a more thorough analysis.

■ The court conducted the following voir dire of Juror Metivier:

THE COURT: I ask you: In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty?

MS. METIVIER: I have problems with that.

THE COURT: You what?

MS. METIVIER: I have problems with that.

THE COURT: You have problems with the Death Penalty? And I ask you a second question: If you found beyond a reasonable doubt that the Defendant was guilty of Murder in the First Degree, and if under the evidence and the facts and the circumstances of the case the law would permit you to consider a sentence of Death, are your reservations about the Death Penalty such that regardless of the law, the facts and the circumstances of the case, you would not inflict the Death Penalty?

MS. METIVIER: No.

THE COURT: You would not inflict the Death Penalty in spite of the evidence, the law and the circumstances of the case? Do I understand you?

MS. METIVIER: Right.

MR. STUART: May I be allowed to ask an additional question?

THE COURT: Yes.

MR. STUART: Ms. Metivier, my question, and I am asking you, do I hear you right? Are you saying that you could never impose the Death Penalty in any case? You are not saying that under a proper case, that you couldn't consider imposing the Death Penalty?

MR. COATS: I object to the form of the question, Your Honor.

THE COURT: The form of the question is improper. It is sustained.

MR. STUART: Ms. Metivier, you are not saying you would automatically refuse to impose the Death Penalty in any case, are you?

MS. METIVIER: No, I'm not.

MR. STUART: That's all I have.

THE COURT: I ask you again: If you found beyond a reasonable doubt that

this Defendant was guilty of Murder in the First Degree, and if under the evidence and facts and circumstances of this case, the law would permit you to consider a sentence of death, are your reservations about the Death Penalty such that regardless of the law, the facts and the circumstances of the case, you would not inflict the Death Penalty?

The reason I repeat the question is because you answered that you would not under any circumstances inflict the Death Penalty when I first asked the question. How do you answer the question now?

MS. METIVIER: I just don't believe in taking one's life. I'm not—You know,—

THE COURT: You are excused for cause.

MR. STUART: May I approach the bench?

THE COURT: Come to the bench.

(The following proceedings were had out of the hearing of the jury.)

MR. STUART: I am going to object to excusing this Juror for cause. I will move for a mistrial on the basis of this. This Juror answered my questions of: Would you automatically refuse to impose the Death Penalty? And she said No.

THE COURT: The objection is overruled.

The Juror Metivier answered "I have problems with that" when asked if she could, in a proper case, agree to imposing the death sentence. She answered "Right" when asked if she would not inflict the death penalty in spite of the evidence, the law, and the circumstances. When that question was repeated by the Court, she answered "I just don't believe in taking one's life."

Although the Juror gave conflicting answers to questions by the Court and Counsel, her answers, when viewed in their entirety, clearly indicated her inability to consider the death sentence under any circumstances.

■ We now examine the excusing for cause of Juror Dragus. While the majority of her answers were tentative, she positive-ly stated that she would not inflict the death penalty. And although the question defense counsel was prohibited from posing was no more confusing than the court's questions, it, nevertheless, was not the appropriate question. Juror Dragus had already given a positive indication of her inability to vote for capital punishment.

Finally, we consider the excusing on voir dire of Juror Musgrave:

THE COURT: In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty?

MS. MUSGRAVE: I believe I could.

THE COURT: That is not a sufficient answer. I take that as being an answer tantamount to saying that you don't know. I will ask it again.

In a case where the law and the evidence warrant, that is a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty?

MS. MUSGRAVE: I don't believe I could.

THE COURT: You don't believe you could? If you found beyond a reasonable doubt that the Defendant in this case was guilty of Murder in the First Degree and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death, are your reservations about the Death Penalty such that regardless of the law, the facts and the circumstances of the case, you would not inflict the Death Penalty?

MS. MUSGRAVE: No.

THE COURT: Ma'am?

MS. MUSGRAVE: No. I don't think I would.

THE COURT: You would not?

MS. MUSGRAVE: Huh-uh.

THE COURT: Is that a positive answer?

MS. MUSGRAVE: Yes, sir.

THE COURT: Or not?

MS. MUSGRAVE: Yes, sir.

MR. STUART: The same objection, Your Honor.

THE COURT: All right. The objection is overruled.

MR. STUART: May I be allowed to ask one question?

THE COURT: Yes, you may.

MR. STUART: Miss Musgrave, I believe I heard you say to that final question that you don't think you would. Now, that—Do I hear that to mean that you could possibly impose the Death Penalty in some particular case?

MS. MUSGRAVE: Yes. That is right.

MR. STUART: Yes, ma'am. That's all I have.

THE COURT: Well, I ask again. In this case if the law and the evidence warrant, in a proper case, if this is a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the Death Penalty? I cannot accept anything short of a positive response to that question, Miss Musgrave. Yes or no?

MS. MUSGRAVE: No. I would say no.

THE COURT: All right. Anything further?

MR. STUART: Yes, sir. May I approach the bench?

THE COURT: Yes.

(The following proceedings were had out of the hearing of the jury.)

MR. STUART: At this time, we move for a mistrial, and we would object to any excusing of Mrs. Musgrave for cause as on this second question she said, "I think I could." She told me she could in a proper—She didn't say she couldn't in any case, and that is what Witherspoon is directed at, and we strenuously object to excusing this Juror.

MR. COATS: I would say Counsel's questions were so leading that she would answer it—She has fairly answered the Judge's questions set out by the Court which is proper, and we move to have her excused.

MR. STUART: May I further say on the record that I think the Judge's question regarding this particular case is not the proper question. A proper case is to be determined by the Jury. This case is not in point now. They can't properly even consider it. The proper question is whether or not they could consider imposing the Death Penalty in some case or a proper case. Not this particular case.

THE COURT: The Defendant's objection is overruled. The Juror will be excused for cause.

(The following proceedings were had in the hearing of the jury.)

THE COURT: Thank you, Mrs. Musgrave. You are excused for cause.

First, Juror Musgrave indicated that she believed that she could agree to the death penalty without doing violence to her conscience. The court demanded a more positive answer and she said that she didn't believe she could agree to the death penalty without its having an effect on her conscience. Then the court asked her his standard, "Would your reservations prevent you from voting for the death penalty?" question. She said, "No," followed by, "No. I don't think I would." The defense attorney then asked if that meant she could possibly impose the death penalty in a particular case, and she said, "Yes. That is right." Finally, the court asked her his standard, "Could you agree to a verdict imposing the death penalty without its doing violence to your conscience?" question, and she answered, "No".

As was the case in the voir dire of the Juror Metivier, the answers of the Juror Musgrave were also conflicting and confusing. However, when viewed in their entirety, her answers also clearly indicated her inability to consider the death sentence under any circumstances.

■ The Supreme Court has held that a sentence of death cannot be upheld if potential jurors are excluded from the panel imposing that punishment on the basis of their personal beliefs about the death penalty. *Witherspoon,* supra. The only legitimate concern upon voir dire of the jury panel is whether they will consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment.

The voir dire examination of the jurors Metivier, Dragus and Musgrave, as set out herein, followed the guidelines set forth in *Koonce v. State,* 456 P.2d 549 (Okl.Cr.1969) and *Gibson v. State,* 501 P.2d 891 (Okl.Cr. 1972). When the voir dire examination is viewed in its entirety as to each juror, and in the light most favorable to the defendant, the trial judge could only conclude that the mind of each juror was that said juror was irrevocably committed, before the trial began, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. Their answers were ambiguous, hesitant and equivocal. The trial judge was in a position to view the facial expressions, voice inflection, and mannerism in answering the questions on voir dire. He evaluated the responses from the totality of the courtroom environment and experience on that day. The record supports his evaluation. Accordingly, no error occurred in excusing the jurors.

■ The appellant's third proposition addresses the excusing for cause of jurors who cannot state that they could consider the death penalty under *Witherspoon* vis a vis the challenge of jurors for implied bias, R.L. 1910, § 5859; now 22 O.S.1981, § 660. The State's classification of this as a suggestion by the appellant that this Court ignore the mandate of the Supreme Court in *Witherspoon* or hold 22 O.S.1981, § 660, unconstitutional is unfounded. The Supreme Court did not hold that jurors who could not consider the death penalty must be excluded, it simply said that was a valid basis for exclusion.

The argument that Section 660 precludes excusal for cause under *Witherspoon* has been rejected by this Court. *Gibson,* supra, and *Koonce,* supra. We are unpersuaded that these holdings should be reconsidered.

■ In his fourth proposition, the appellant states that the jury instructions unconstitutionally shifted the burden of proof to him to mitigate the homicide from murder to manslaughter, drawing the Court's attention specifically to Instructions No. 5, 5A, 7, 8, 9, 10, and 14. He alleges that he was required to prove that his actions were executed in the heat of passion upon adequate provocation and in the absence of malice, which effectively forced him to prove that the homicide was manslaughter, not first degree murder, citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and distinguishing *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

The trial court's instructions have been examined. In Instruction No. 5, the court defined and required proof beyond a reasonable doubt of all of the elements of murder in the first degree, with emphasis on malice. Circumstantial evidence was the subject of Instruction No. 6. In the seventh instruction, manslaughter in the first degree was defined as a lesser included offense of murder in the first degree, with emphasis on absence of malice and heat of passion. Instructions No. 8, 9 and 10 defined heat of passion, adequate provocation, and absence of malice. Instruction No. 14 summarized the definitions of murder in the first degree and manslaughter in the first degree, with emphasis on the State's burden to prove all elements beyond a reasonable doubt and the operation of presumptions in the defendant's favor.

The State charged the appellant with murder in the first degree and proved each and every element of that crime. Included within that crime under the facts of this case is manslaughter in the first degree, and the court carefully instructed the jury regarding each and every element of that crime. See both the majority and concurring opinions in *Morgan v. State,* 536 P.2d 952 (Okl.Cr.1975). The use of the word "reduce" in comparing manslaughter to murder when instructing on the heat of passion upon adequate provocation, as was done in Instructions 8 and 9, does not operate to shift the burden of proof to the defendant. The State was not required to prove absence of malice and heat of passion upon proof that the appellant had committed murder with malice aforethought.

However, the jury was free to interpret the facts proved and determine that the State had proved manslaughter rather than murder. This bears no relationship to any proof demanded of the appellant.

The appellant maintains that *Mullaney v. Wilbur, supra,* controls. In *Mullaney,* a statutory presumption operated against the defendant that he had committed the homicide with malice aforethought. This presumption, however, could be rebutted upon proof, by the defendant, that he had acted in the heat of passion. Mullaney's jury was instructed that malice aforethought and heat of passion are inconsistencies and that the defendant could negate the former by proving the latter. The Supreme Court held that this was a shifting of the burden of persuasion to the defendant, in contravention of his right to due process of the law.

In *Patterson v. New York, supra,* the statutory scheme provided for the affirmative defense that the defendant had acted under an extreme emotional disturbance for which there was a reasonable excuse. The Supreme Court held that the *Patterson* court, unlike *Mullaney,* did not shift the burden to the defendant to disprove any fact essential to the offense because the affirmative defense of emotional disturbance bore no direct relationship to any element of murder. Unlike *Mullaney,* nothing was presumed in *Patterson.* The Court held, "To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue..." 432 U.S. at 209, 97 S.Ct. at 2326, 53 L.Ed.2d at 291.

■ The principal of *Patterson* is applicable even though *Patterson* involved proof of an affirmative defense. The State is not required to prove the nonexistence of a lesser included crime in order to prove the greater crime. Accordingly, *Mullaney* is not applicable because no presumptions operated to relieve the State of its burden to prove each and every element and there was no shifting to the defendant of any burden of proof.

■ Instruction No. 5A, to which the defense's objection was overruled, reads as follows:

You are further instructed that a design to effect death may be inferred from the fact of the killing when that killing is done by the use of a dangerous weapon in such a manner as naturally and probably to cause death unless the circumstances raise a reasonable doubt whether such design existed.

The appellant maintains that this instruction parallels the unconstitutional presumption struck down in *Sandstrom v. Montana, supra.* In *Sandstrom,* the jury was told that "the law presumes that a person intends the ordinary consequences of his voluntary acts," thus effectively absolving the State from proving each and every element beyond a reasonable doubt.

The distinction is obvious. In the case at hand, no presumption was declared. An inference was provided, but the jury was not directed that a legal presumption should or would be followed.

As his fifth assignment of error, the appellant seeks reversal on the basis of certain instructions which he says denied him his right to have his claim of self-defense considered by the jury. Specifically it is alleged that Instructions No. 12, 12A, and 12B misstated the law and denied him his self-defense theory; and that Instruction No. 12A shifted the burden of proof to him. The only objections made at trial went to 12A and 12B as repetitive and confusing.

■ The primary argument is that Instruction No. 12, which parallels the self-defense instruction discredited by this Court in *Neal v. State,* 597 P.2d 334 (Okl.Cr.1979), denied the appellant his right to an instruction on his theory of defense. A defendant is entitled to an instruction on his defense when that theory is supported by the record. *Holt v. State,* 278 P.2d 855 (Okl.Cr. 1955).

The following Instruction No. 12 was given by the trial court:

In this case, the defendant, as one of his defenses, says that at the time of the

difficulty, he, the said defendant, was justified and in doing as he did, he was acting in his necessary self defense to protect himself from the unlawful attack of his adversary, and when a person is unlawfully attacked in such manner as to induce in him a reasonable belief that he is in danger of losing his life, or of suffering great bodily harm, he is not required to retreat, but has the right to stand his ground and use whatever force that seems necessary to repel the attack in order to save himself from death, or to prevent what appears to him to be great bodily injury threatened to himself, but he should at the time use all reasonable means, apparent to a reasonable person under the circumstances, to avoid such danger, before injuring any person.

It is not necessary for this defense that the defendant's danger should have been actual or real, all that is necessary is that the defendant, from his standpoint, and under all the circumstances in the case, had reasonable cause to believe, and did honestly believe, there was imminent danger to his life or of great bodily injury being done to him, and in determining whether or not the defendant acted in his own necessary self defense, you shall view the circumstances as they then existed from the standpoint of the defendant, and viewing the circumstances from that standpoint, you shall determine whether or not he was acting reasonably in his own necessary self defense.

Should you find from the evidence in this case that the defendant acted in his own necessary self defense, or should you entertain a reasonable doubt thereof, you should give the defendant the benefit of such doubt and acquit him.

■ The same instruction was criticized by this Court in *Neal v. State,* supra, and the assault and battery conviction was reversed. In that decision, this Court said, "This instruction is confusing at best. It states that the appellant did not have a duty to retreat; but it then provides that he should have used 'all reasonable means, . . . to avoid [the] danger.'" *Neal* at 337. However, *Neal* was not reversed on the basis of that instruction alone. The evidence was not overwhelming and the prosecutor relied on the confusing instruction to argue that the defendant had not tried to retreat before defending himself. *Porter v. State,* 611 P.2d 278 (Okl.Cr.1980).

The record includes five instructions defining and explaining the self-defense theory and applicable law. Instruction No. 11 defines justifiable homicide and introduces the concept of self-defense. Instruction No. 12 is the *Neal* instruction. Instruction No. 12A describes the circumstances under which one might reasonably fear that he is in danger of injury or death at the hands of the deceased resulting in a justifiable homicide. Instruction No. 12B defines "necessary self-defense" as "a necessity imminent at the time of the killing and not prior thereto." That instruction also qualifies the defense to the extent that, should the deceased flee and the defendant pursue him when he is no longer in danger, it is not a killing in self-defense. And, finally, Instruction No. 13 deals with a situation in which the defendant is the initial aggressor, in which case self-defense does not apply. An important concept in that instruction is stated as follows:

But one who is not the aggressor and is in a place where he has a right to be, when violently assaulted, or when by the hostil [sic] conduct or demonstration of another, he is induced to apprehend a design on the part of the latter to take his life or inflict upon him some great bodily harm may, *without retreating,* stand his ground and resort to the use of such force and violence as to him seems *reasonably necessary* for his own safety, *even to the taking of life,* and such killing will be justified on the ground of self-defense, even though such danger was not real, but apparent. [Emphasis added.]

This instruction breaks down the inherent inconsistency of Instruction No. 12 by further explaining the concept of means that are reasonable to avoid the danger against which the defendant has acted to secure his own safety. Our thorough examination of these instructions and the law on self-de-

fense reveals that the appellant was not denied his defense theory.

▮ Also attacked are two portions of the closing arguments by the prosecutors, which the appellant cites to bring this case directly within the *Neal* rule. However, an examination of those arguments reveals no improprieties nor exacerbation of any confusion created by Instruction No. 12.

▮ Finally, an attempt is made to characterize Instruction No. 12A as shifting the burden, in violation of *Mullaney v. Wilbur,* supra. That argument, however, is completely without merit. No part of the cited instruction indicates that the defendant bears the burden to prove beyond a reasonable doubt that he acted in self defense. Furthermore, the citation to *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.1978), cert. den. 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978), is inappropriate. In *Berrier,* the jury was instructed that the defendant had to prove self defense. Yet, under Michigan law, proof of the absence of self defense is an element of murder, which must be proved by the State. The Sixth Circuit Court of Appeals reversed the conviction because of an unconstitutional shifting of the burden of proof, citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* and *Patterson v. New York,* supra. However, the law in Oklahoma does not include the absence of self defense as an element of murder. No error is found.

In his sixth assignment of error, the appellant argues that the trial court erroneously overruled his pretrial motion in limine to exclude a prior murder conviction from use in impeachment. The motion was not re-urged at trial, and the evidence of the prior conviction was admitted when the appellant testified in his own behalf, and not when the State cross-examined him, as had been anticipated by the pretrial motion.

▮ A motion in limine is a written pretrial motion to preclude evidence which would have no proper bearing on the issues and would prejudice the jury. *Tahdooahnippah v. State,* 610 P.2d 808 (Okl.Cr.1980).

The ruling on a motion in limine is advisory only, and an incorrect ruling is not reversible error. In fact, no error occurs until the matter arises during trial, an objection is entered, and, at that time, the trial court incorrectly permits or prohibits it. *Teegarden v. State,* 563 P.2d 660 (Okl.Cr.1977). In the case at hand, the appellant's own testimony was the source by which the jury was exposed to the evidence of his prior conviction. No relief is available on appeal.

▮ The seventh proposition on appeal addresses the trial court's denial of the appellant's motion for continuance, filed on the first day of trial, which was based upon the pendency of a collateral attack on the prior murder conviction in Missouri. That conviction, arising out of a guilty plea, was allegedly secured in violation of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In interpreting the "Postponement for Cause" statute, 22 O.S.1981, § 584, this Court has acknowledged that the ruling rests with the sound discretion of the trial court, which will not be disturbed absent abuse, and this is particularly true where the motion is offered on the date set for trial. *Kirk v. State,* 555 P.2d 85 (Okl.Cr. 1976). Further, as the State argues on appeal, the pendency of an appeal from a conviction does not render the evidence of that conviction inadmissible. *Newcomb v. State,* 23 Okl.Cr. 172, 213 P. 900 (1923); now a part of the Evidence Code, at 12 O.S.1981, § 2609(E). The same rule applies to a pending collateral attack on a conviction. Therefore, Judge Cook properly exercised his discretion when he overruled the motion for continuance, knowing that the prior conviction, and evidence of the pending collateral attack, would be admissible evidence.

▮ The excusing of a juror by the trial court, on defense counsel's motion, and substitution of an alternate juror, over objection of defense counsel, is urged as error in the eighth assignment. The defense had entered a motion for a mistrial upon the court's excusing of the juror, who had expressed the fear that she would be preju-

diced by her previous contact with two State's witnesses, whom she recognized when they testified. The appellant urges this Court to reconsider its holding in *Washington v. State,* 568 P.2d 301 (Okl.Cr.1977), and find, instead, that 22 O.S.1981, § 601a, operates to the exclusion of all other causes upon which a juror may be excused.

Our review of the transcript indicates that the trial judge meticulously proceeded ·in the questioning of this juror, when she notified the court of her prior knowledge of the two witnesses, and, in the discussion with counsel, gave consideration to the argument that a mistrial should be declared. However, the court then found that an alternate juror had already been selected and that defendant would not be prejudiced by the substitution of the alternate.

In *Washington v. State,* supra, this Court held that 22 O.S.1981, § 601a, which provides for substitution of an alternate for a regular juror in the case of illness or death, is not exclusive, citing as persuasive *People v. Howard,* 211 Cal. 322, 295 P. 333 (1930), in which the California court found that the substitution had not substantially affected the rights of the defendant. This Court continued by acknowledging the trial court's inherent power to substitute jurors for good cause, citing *Gregg v. State,* 69 Okl.Cr. 103, 101 P.2d 289 (1940), which relied on *Boutcher v. State,* 4 Okl.Cr. 576, 111 P. 1006 (1910). In *Boutcher,* this Court held,

> If, for any reason, the trial court is of the opinion or even suspects that any given juror is not fair and impartial ..., it is not only the right, but it is also the duty, of the court to excuse such juror either upon the challenge of one of the parties or upon the motion of the court without such challenge. *Boutcher,* 111 P. at 1008.

The appellant seeks reversal on a minor, technical matter, stating that the enactment of 22 O.S.1981, § 601a, abrogated the discretion of the trial judge to substitute a juror for any cause other than illness or death. There is no merit to this argument.

A multiple hearsay problem is drawn to this Court's attention in proposition number nine. A statement allegedly made by the now deceased Robert Jones relating a threat made by the appellant to him was elicited from Henry Jones on direct examination. The statement was admitted into evidence only after an in camera hearing in which the trial court scrutinized the question of the admissibility of both of the hearsay statements. The testimony of Henry Jones admitted, after the trial court's ruling, was as follows:

> He told me that Charlie said he had a gun and that he ought to pull it out and shoot us all. (TR. 510)

Robert Jones, while still at the scene of the confrontation, made this statement to Henry Jones immediately after his encounter with the appellant, Charles Davis, the Wednesday before the homicide.

■ Our examination of this twofold statement convinces us that the trial judge accurately analyzed the statements and that Henry Jones' testimony was properly admitted. First, there was the appellant's statement to Robert Jones, in effect a threat to kill Robert and the others. This statement was properly admitted to indicate the declarant's intent toward future conduct. *Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); *Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *Wadley v. State,* 553 P.2d 520 (Okl.Cr.1976); and *Sallee v. State,* 544 P.2d 902 (Okl.Cr.1976). This hearsay exception is now in effect by legislation. Laws 1978, ch. 285, § 803; now 12 O.S.1981 § 2803(3).

■ The second portion of this hearsay evidence consists of the statement made by Robert Jones to Henry Jones immediately after the alleged threat by the appellant. This clearly falls within the excited utterance exception, which this Court has held admissible, although it is hearsay, "... because it is thought to have independent indicia of reliability. That is, an excited utterance made contemporaneous with a specific event, which relates to or describes the event, is held to be reliable because its

nearness to the stimulating event excludes the possibility of premeditation and fabrication." (Citations omitted) *Bishop v. State,* 581 P.2d 45 at 48 (Okl.Cr.1978). Thus, the sincerity of the statement is reliable. Now see 12 O.S.1981, § 2803(2).

Finally, these hearsay statements demonstrate a trustworthiness within the spirit of the specific exceptions. 12 O.S.1981, § 2803(24); and § 2804(B)(5). The allegation of error is not supported by the law.

■ In his tenth argument, the appellant contends that the trial court erroneously ruled inadmissible the testimony of his probation officer, in which she would have testified that the appellant had stated to her, after the homicide, that his actions were in self-defense. The evidence allegedly should have been admitted under the hearsay exclusion, which is now embodied in 12 O.S.1981, § 2801(4)(a)(2). The pertinent portion of Section 2801 is as follows:

4. A statement is not hearsay if:

(a) the declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is

(2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication. . .

However, in this trial, the excluded evidence was offered prior to any testimony establishing self-defense, and therefore it could not have properly been characterized as a prior consistent statement to rebut any State's evidence tending to establish recent fabrication.

■ In proposition number eleven, the appellant addresses the failure of the trial court to declare a mistrial when the appellant testified to evidence of another crime. The following dialogue occurred on cross-examination of the appellant by the District Attorney:

Q. Now, how many guns did you own during the week prior to August the 13th of 1977?

A. Two.

Q. What kind of guns were they?

A. A .25 automatic and a .38 automatic.

Q. All right, sir. What about State's Exhibit No. 28? When did you get that gun?

A. Oh, right after—The next day after they pulled those guns on me up there in Sapulpa.

Q. All right. You already had two guns. Why did you get another one?

A. Well, Kathy had one of them.

Q. All right.

A. And the State Highway Patrol in Chandler had the other one.

Q. How did they get it?

A. They took it off me.

Q. Where did he take it off you?

A. On the freeway.

Q. Is that after you had been at this meeting in Sapulpa?

A. Yes, sir.

Q. So you had a gun up there with you?

A. Yes, sir.

MR. STUART: Your Honor, may I approach the bench?

THE COURT: Yes.

(The following proceedings were had out of the hearing of the Jury.)

MR. STUART: At this time, the Defendant moves for a mistrial because of the admission of evidence of another crime at the arrest by the Highway Patrolman and its prejudicial affect. [sic] I don't see any probative value.

MR. COATS: He volunteered it. I didn't specifically ask him about it.

THE COURT: Overruled.

There are several bases upon which the trial court's ruling is sustainable: the invitation of this evidence both by an unresponsive answer and by the appellant's own testimony regarding the meeting in Sapulpa and the existence of certain guns, *Hainta v. State,* 596 P.2d 906 (Okl.Cr.1979); failure by defense counsel to object in time to prevent the jury from hearing this evidence; and the giving of an instruction by the court in which evidence of other crimes was to be considered only for limited purposes. However, the primary issue here is whether the evidence of other crimes af-

fected the verdict of the jury, and we find that it did not. These facts are susceptible to this Court's ruling in *Agee v. State,* 562 P.2d 913 (Okl.Cr.1977), where there was only an implication of another crime, obvious only to defense counsel. "To extend the protection of this [other crimes] rule to every possible implication which might be conceived by defense counsel would be a severe stretching of the rule. This Court is not willing to extend the rule this far." *Agee,* supra, at 916.

■■■ Improper impeachment is the subject of the twelfth proposition on appeal. The appellant testified, on direct examination, to his former conviction for murder. During cross-examination, the State elicited evidence of related parole violations.

Although both parties addressed this issue on appeal, neither cited relevant authority. *Dick v. State,* 596 P.2d 1265 (Okl.Cr. 1979). This alleged error will not be considered.

In his thirteenth assignment of error, the appellant calls this Court's attention to the following argument made by the District Attorney at the close of the first stage of trial:

MR. COATS: ... I thought and believed that it was Murder in the First Degree when I filed this case ... I think we believe that it is now.

\* \* \* \* \* \*

[An objection was entered and overruled.] ... I am equally convinced at this point, listening to the evidence of the witnesses. I think the evidence amply demonstrates, all the way through here, and that you may be compelled to the one ultimate conclusion, and that is this Defendant committed two cases of Murder in the First Degree...

■■■ The prosecutor is permitted to draw logical inferences and state his conclusions based upon the evidence. *Williams v. State,* 557 P.2d 920 (Okl.Cr.1976). However, it is improper for the prosecutor to state his personal opinion or to influence the jury to rely on his expertise as the State's attorney. See *Davis v. State,* 413

P.2d 920 (Okl.Cr.1966). We find that the first portion of the District Attorney's argument, in which he states that he believed it was Murder in the First Degree at the time of filing, if error was harmless when weighed against the evidence of guilt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *James v. State,* 637 P.2d 862 (Okl.Cr.1981).

Under his fourteenth assignment of error, the defendant argues that the misconduct of the prosecutor during closing arguments in the second stage of the trial proceedings irreparably prejudiced the defendant's right to a fair and impartial trial.

The statements of the prosecutor in his final argument of which defendant complains are as follows: "We are losing the ability to become angry. Doesn't it sometimes—Don't you sometimes feel that sometimes we have got to stand up and say no more? You know? No more."

After defendant's objection was overruled, the prosecutor continued, "That has got to stop? and you cannot commit crimes of this kind with impunity. And a life sentence for this man isn't punitive. We tried that already. And it didn't work...."

He continues further,

... I suppose you don't do it, and you pick up the morning paper in a month or a week or five years, and he has killed somebody else. How do you live with that? How do you say to yourself: You know, if I had had the courage to do what was right and what the evidence compels and what the law requires, if I had had the courage to do it then, it wouldn't have happened. Not only is there a distinct possibility that by coming out and saying no more, that you might deter others from this act....

After a further objection was overruled, the prosecutor continued:

Suppose that you know by your judgment here and by having the courage to stand up and say it, suppose you just deter one other person from committing this crime. Cause one person to think just a minute

before they do it. Before they pull that trigger, and they won't, and the score is even. . . .

In support of this allegation, defendant cites a number of cases wherein this Court has held that argument of counsel should be particular to the circumstances surrounding the crime of the individual defendant and not for the need of the community to speak out and deter others. (*Mitchell v. State,* Okl.Cr., 408 P.2d 566; *Ball v. State,* Okl.Cr., 375 P.2d 340; *Potter v. State,* Okl.Cr., 511 P.2d 1120); should not attempt to make the defendant bear the burden for an entire group of wrongdoers (*Chase v. State,* Okl. Cr., 541 P.2d 867); and should not attempt to get the issue of parole before the jury. (*Evans v. State,* Okl.Cr., 541 P.2d 269).

█ None of the cases cited by defendant deals with argument of counsel in the second stage of a proceeding involving the death penalty. There was evidence in the case before us, during the second stage of the trial, that the defendant had been previously convicted of murder, and he did return from prison to kill again, not once, but twice, and caused serious bodily injury to two others. Nor can the remarks of the prosecutor be considered an "unmistakable reference" to the pardon and parole system. His remarks were derived solely from the direct evidence presented during both stages of the trial. The prosecutor was justified in his remarks, which fell within the boundaries of permissible closing argument.

█ Furthermore, any alleged error which might have occurred was waived by the defendant's failure to request that the jury be admonished to disregard the statement. In *Sallee v. State, supra,* this Court held that for an alleged error to be properly preserved for review by this Court on appeal, defense counsel must not only voice a timely objection, but must also request that the jury be admonished to disregard the statement. In that case, the defendant failed to request an admonishment and the court held he failed to properly preserve the record, thereby waiving his right to complain of the comments alleged as error.

For his fifteenth assignment of error appellant argues that the Oklahoma death penalty statute, 21 O.S.1981 § 701.9, constitutes cruel and unusual punishment; violates his right to due process and equal protection of the laws; perpetrates the arbitrary infliction of the death penalty; and reveals the total absence of any statutory mitigating circumstances.

█ That the death penalty is not cruel and unusual punishment was firmly established in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). We reiterate that it was constitutionally incorporated into our criminal procedure. *Eddings v. State,* Okl.Cr., 1980, 616 P.2d 1159 certiorari granted 450 U.S. 1040, 101 S.Ct. 1756, 68 L.Ed.2d 237, (remanded for resentencing), therefore it comports with due process and equal protection requirements.

█ While it is true that as it appears 21 O.S.1981, § 701.9 does not enumerate specific mitigating circumstances as required by *Gregg,* supra, this is not grounds for reversal because in its instructions the trial court submitted eight such circumstances and further instructed that the jury need not confine its deliberations to them. They were allowed to consider any additional circumstance in mitigation which appeared from the evidence. No error occurred.

█ Appellant's sixteenth assignment of error is that 21 O.S.1981, § 701.9 is unconstitutional because the State has failed to show that the death penalty fulfills a compelling State interest which cannot be gratified by less drastic means.

However, this rationale was not adopted by the Supreme Court in *Gregg v. Georgia,* supra:

Although we cannot invalidate a category of penalties because we deem less severe penalties adequate to serve the ends of penology, . . . the sanction imposed cannot be so totally without penological justification that it results in the gratuitous

infliction of suffering. 428 U.S. 182, 183, 96 S.Ct. at 2929.

\* \* \* \* \* \*

Therefore in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible as long as the penalty selected is not cruelly inhumane or disproportionate to the crime invoked. And a heavy burden rests on those who would attack the judgment of the representatives of the people.

Therefore this proposition is without merit.

■ For his seventeenth assignment of error appellant alleges · that instruction number five unconstitutionally shifted the burden of proof to the defendant:

You are instructed that in the event you unanimously find that one or more of these aggravating circumstances existed beyond a reasonable doubt, then you would be authorized to consider imposing a sentence of death.

If you do not unanimously find beyond a reasonable doubt one or more of the statutory aggravating circumstances existed, then you would not be authorized to consider the penalty of death. In that event the sentence would be imprisonment for life.

If you do unanimously find one or more of these aggravating circumstances existed, then you would not be authorized to consider the penalty of death. In that event the sentence would be imprisonment for life.

If you do unanimously find one or more of these aggravating circumstances existed beyond a reasonable doubt and you further find that such aggravating circumstance or circumstances is outweighed by the finding of one or more mitigating circumstances the death penalty shall not be imposed. In that event the sentence would be imprisonment for life.

Similar instructions have passed constitutional muster. In *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), we held:

The jury was also instructed in accordance with Section 701.11 that the sentence would be life imprisonment if they found no aggravating circumstances or if mitigating circumstances outweighed the aggravating circumstances they found. We hold these instructions gave the jury sufficient guidance to prevent an arbitrary or discriminating application of the death penalty.

We find that the burden of proof was not shifted by these instructions.

For his eighteenth proposition of error appellant contends that the aggravating circumstance that the offense committed was especially heinous, atrocious and cruel is unconstitutionally vague and overbroad. We reject this contention and reaffirm our decision in *Chaney,* supra, that Instruction No. 8 gave the jury adequate guidance:

You are further instructed that the term 'heinous,' as that term is used in these instructions means extremely wicked or shockingly evil, and that 'atrocious' means outrageously wicked and vile; and 'cruel' means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others; pitiless.

■ For his nineteenth assignment of error appellant asserts that the evidence by the prosecution is insufficient as a matter of law to prove beyond a reasonable doubt the aggravating circumstance that the crime was especially heinous, atrocious, or cruel. He essentially argues that in order for the crime to fall within this category a substantial amount of physical or mental torture must precede the killing; which has been the general interpretation of the Florida court. *State v. Dixon,* 283 So.2d 1 (Fla. 1973). See *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913. However, in construing 21 O.S.Supp.1976 § 701.12(4), we are not bound only by the limitation that our interpretation not be open-ended. *Gregg v. Georgia,* supra. Accordingly we find that since appellant perpetrated a mass-murder by inflicting multiple gunshot wounds to his victims the jury was present-

ed with sufficient evidence from which they could find the acts "atrocious" as defined in the instructions. No error occurred.

■ For his twentieth assignment of error appellant argues that the instructions of the trial court during the second stage of the trial proceedings were inadequate as a matter of law. Particularly arguing that the jury was not instructed properly under 21 O.S.Supp.1976, § 701.11 that they may refuse to impose the sentence of death after finding the presence of an aggravating circumstance which outweighs mitigating circumstances, appellant demands reversal. Appellant did not object at trial and offers no authority for his proposition. We find that the instruction's fairly and accurately stated the applicable law. *Batie v. State,* 545 P.2d 797 (Okl.Cr.1976).

■ For his twenty-first assignment of error appellant argues that error occurred in an instruction which allowed the jury to consider all the facts and circumstances presented in the first stage of the proceedings in considering the correct punishment. However this contention is without merit in light of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) where the Court held

> ... we conclude that the Eighth and Fourteenth Amendments require that the sentence in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

■ In appellant's twenty-second proposition, appellant complains of Instruction No. 13 to the second stage of the proceedings:

> You should not allow sympathy, sentiment or prejudice to affect you in reaching your decision, or any other arbitrary factor. You should avoid any influence of passion or prejudice when imposing sentence.
> No. 6 You are not limited in your consideration to these minimum mitigating cir-

cumstances, if any you find from the evidence in this case. What are and what are not additional mitigating circumstances is for you the jury to determine.

The appellant specifically argues that Instruction No. 13 precluded the jury from considering as mitigating circumstances of character and prior record. We do not agree. When read with No. 6, the context of these instructions bound the jurors to confine their deliberation to objective analysis of the evidence presented and to dispense with any deep seated bias or arbitrariness. No error occurred.

For his twenty-third assignment of error appellant argues that the trial court improperly instructed the jury to unanimously return a verdict and select a verdict form in violation of 21 O.S.Supp.1981 § 701.11. Furthering his argument for reversal, it is argued that § 701.11 mandates the trial court to instruct the jury to render a life sentence if they cannot reasonably agree to a verdict; that the court would intervene if they could not agree.

■ Jury verdicts in Oklahoma criminal procedure must be unanimous. 22 O.S.1981, § 921, 922. When read in conjunction with 21 O.S.1981, § 701.11, it is clear that in a capital case (1) a verdict for the sentence of death must be unanimous and accompanied by an aggravating circumstance, (2) death will not be imposed if the jury unanimously finds that mitigating factors outweigh aggravating circumstances, (3) that a jury verdict recommending life imprisonment must be unanimous, (4) that if the jury cannot agree within a reasonable time the court shall dismiss the jury and record a life sentence.

■ As his final assignment of error appellant complains of Instruction No. 5 to the second stage of the proceedings. He argues that he is entitled to an instruction to the effect that if the jury may refuse to impose a sentence of death even if the aggravating circumstances outweigh the mitigating circumstances or if none exist.

We find that the trial court instructions correctly stated the law and particularly

that language of the first paragraph "authorized to consider imposing a sentence of death" left the jury free to consider either life or death in a fair manner. Accordingly no error occurred.

Finally, as required by 21 O.S.1981, § 701.13(B) this Court makes the following findings with regard to sentences of death which have been imposed by the jury. Accordingly we find that: (1) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) the evidence supports the jury's finding of statutory aggravating circumstances as enumerated in 21 O.S.1981, § 701.12; (3) and the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases after considering both the crime and the defendant.

For the reasons herein stated, the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED.

Judge Tom R. Cornish filed his recusement in this appeal and the Honorable Donald E. Powers, District Judge for the 23rd Judicial District was appointed to serve in his stead. Judge Powers authored this opinion.

BUSSEY, P.J., concurs.

BRETT, Justice, concurs in part and dissents in part:

While I agree that the conviction for Murder in the First Degree should be affirmed, I cannot concur with the majority that the death sentence should be affirmed because I believe that Jurors Metivier and Musgrave were excused in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

When the court asked Juror Metivier the question ending, " . . . [A]re your reservations about the [d]eath [p]enalty?" She answered, "No."[1] A negative response to that question must be interpreted to mean, "No, my reservations are not such that I would not inflict the death penalty." How-

ever, the trial judge, attempting to clarify the confusing question, asked it more simply and she indicated that she would not inflict the death penalty.

At this point, Juror Metivier had given two answers in direct conflict. Then the defense attorney asked her if she was saying that she would automatically refuse to impose the death penalty, and she replied, "No, I'm not." The court repeated its second question, and her reply reflected her beliefs when she said, "I just don't believe in taking one's life . . ." It did not reflect her willingness to consider death as a punishment.

The Supreme Court has held that a sentence of death cannot be upheld if potential jurors are excluded from the panel imposing that punishment on the basis of their personal beliefs about the death penalty. *Witherspoon,* supra. The only legitimate concern upon voir dire of the jury panel is whether they will consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment.

With this in mind, the trial court's standard first question is not pertinent. The second question is confusing to read, and it must be even more confusing to hear. Given that, and Juror Metivier's response to the defense attorney's question, the excusal for cause of this juror was error.

I also believe that the majority's analysis of the voir dire of Juror Musgrave is clearly erroneous. First, Juror Musgrave indicated that she believed that she could agree to the death penalty without doing violence to her conscience. The court demanded a more positive answer and she said that she didn't believe she could agree to the death penalty without its having an effect on her conscience. Then the court asked her his standard, "Would your reservations prevent you from voting for the death penalty?" question. She said, "No," followed by, "No. I don't think I would." The defense attorney

1. Confusion apparently stems from the use by the court of a question couched in negative language.

then asked if that meant she could possibly impose the death penalty in a particular case, and she said, "Yes. That is right." Finally, the court asked her his standard, "Could you agree to a verdict imposing the death penalty without doing violence to your conscience?" question, and she answered, "No." [2]  As I have already said, whether it would do violence to her conscience is not the issue. This voir dire is replete with confusion, and the only two things that are clear are as follows: It would affect her conscience. And this would not prevent her from considering the death penalty under the appropriate circumstances.

The exclusion of Juror Musgrave was error.

For these reasons, I believe that the sentence should be modified to imprisonment for life.

2. The crucial determination is whether the juror would conscientiously consider the death penalty as one of the punishment alternatives, not whether it would affect her conscience.